Meredith Holley(she/her), OSB No. 125647
Meredith@ErisResolution.com
Shiwanni Johnson (she/her), OSB No. 214106
Shiwanni@ErisResolution.com
Law Office of Meredith Holley
207 E 5th Avenue, Suite 254
Eugene, OR 97401
Phone: (458) 221-2671
Fax: (833) 352-3615
    *Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| LAURA HANSON,<br><br>       Plaintiff,<br><br>v.<br><br>STATE OF OREGON, LEGISLATIVE ASSEMBLY,<br><br>       Defendant. | Case No. 3:21-cv-00780-SI<br><br>AMENDED COMPLAINT<br>(Disability Discrimination, Disability Retaliation, Medical Leave Interference, Medical Leave Retaliation, Whistleblower Retaliation)<br><br>NOT SUBJECT TO MANDATORY ARBITRATION<br><br>Jury Trial Requested |

Plaintiff Laura Hanson alleges as follows:

**INTRODUCTION**

1.

In December 2018, Senator Sara Gelser Blouin hired Plaintiff Laura Hanson to work for Defendant Legislative Assembly, knowing Ms. Hanson has at least one disability related to her mental health. In late 2019, when Ms. Hanson urgently

needed medical leave for her mental health disabilities, Senator Gelser Blouin suddenly became very angry with Ms. Hanson, accusing her of making an error that was actually Senator Gelser Blouin's mistake. Ms. Hanson told Senator Gelser Blouin this was abusive behavior. On December 30, 2019, Senator Gelser Blouin reported herself to Defendant Legislature's Human Resources, knowing her report would result in a public investigation and hearings process into Ms. Hanson's mental health disabilities.

2.

On January 6, 2020, after learning that Ms. Hanson's statement regarding abuse related to protected leave she attempted to take for her disabilities, Defendant Legislature suspended Ms. Hanson from work, restricting her from the workplace and to her home for Senator Gelser Blouin's "protection," although there were no allegations of wrongdoing against Ms. Hanson. Defendant Legislature hired an unlicensed investigator, a lawyer who typically litigates against employees trying to enforce their employment rights, to make recommendations to the Senate Conduct Committee about Senator Gelser Blouin's complaint against herself. After 10 months of investigation, multiple interviews, and two public hearings about Ms. Hanson's health conditions, the investigator recommended that leave for mental health is not protected under the law and Ms. Hanson was not entitled to medical leave because of her mental health disabilities. On October 7, 2020, after 10 months of restricting Ms. Hanson to her home as a condition of her employment because of her mental health disabilities, the Senate Conduct Committee unlawfully ratified Senator Gelser Blouin's actions against Ms. Hanson. Senator Gelser Blouin terminated Ms. Hanson that day.

3.

Plaintiff Laura Hanson is a resident of Multnomah County, Oregon. Ms. Hanson is a qualified person with multiple disabilities. She has been diagnosed with mental and/or physical impairments that substantially limit many of her major life activities. At all times relevant to this Complaint, Defendant was aware of Ms. Hanson's disabilities. At all times relevant to this Complaint, Ms. Hanson was able to perform all of the essential functions of her job with or without accommodation.

4.

Defendant State of Oregon, Legislative Assembly (Defendant Legislature) is a state government entity, governing throughout the State of Oregon. At all times relevant to this Complaint, Defendant Legislature was Plaintiff's employer until it terminated her employment on October 7, 2020. Defendant Legislature employs more than 50 people.

5.

Venue is proper in Multnomah County because the cause of this action, or some part of it, arose in that county in that Defendants directed their actions towards Multnomah County, where Plaintiff worked from home and resided when she was suspended from work and assigned to home.

**FACTS**

6.

In December 2018, Defendant Legislature hired Plaintiff Laura Hanson as Chief of Staff for Senator Sara Gelser Blouin (Senator Gelser at the time). Senator

Gelser Blouin and Legislature knew Ms. Hanson had been diagnosed with at least one disability.

7.

At all times in acting as Ms. Hanson's supervisor, Senator Gelser Blouin was acting in the scope and course of her employment with Defendant Legislature or as a proxy for Defendant Legislature.

8.

In October 2019, Ms. Hanson sustained an injury and required medical leave to recover. When Ms. Hanson returned, Senator Gelser Blouin seemed angry. It seemed like she was angry about the medical leave because Senator Gelser Blouin tried to oppose Ms. Hanson receiving paid days off for the medical leave.

9.

On December 10, 2019, medical providers diagnosed Ms. Hanson with another disability. Ms. Hanson immediately reported this diagnosis to Senator Gelser Blouin. Senator Gelser Blouin did not say anything about accommodations or attempt to engage in any interactive process.

10.

On December 17, 2019, Ms. Hanson had a severe experience of impairment related to her disabilities. Ms. Hanson saw her therapist that afternoon and the therapist said it was urgent that Ms. Hanson take medical leave because of her disabilities.

11.

Later on December 17, 2019, Ms. Hanson wrote to Senator Gelser Blouin, "I'm thinking about taking the 20th as a mental health day because the need is

urgent[.]" Senator Gelser Blouin knew that Ms. Hanson's disabilities are related to her mental health.

12.

On December 18, 2019, Senator Gelser Blouin told Ms. Hanson she should wait until the next week to take time off. Because Senator Gelser Blouin had been angry with Ms. Hanson about her recent medical leave, Ms. Hanson was afraid to insist she be allowed to take medical leave.

13.

Later on December 18, 2019, Ms. Hanson texted Senator Gelser Blouin that she had a severe symptom of illness. Senator Gelser Blouin texted Ms. Hanson back, without acknowledging the illness or need for medical leave, and asked about a work task.

14.

Ms. Hanson worked on December 19 and 20, 2019, and through the weekend because Senator Gelser Blouin said she needed to and Ms. Hanson was afraid to demand to take medical leave.

15.

Through the week of December 23, 2019, Senator Gelser Blouin pressured Ms. Hanson to continue working, texting her about a cell phone SIM card she wanted Ms. Hanson to change, telling her it cost "$5/day!!" "I'm on the hook for an additional $80z [sic]," "please do it ASAP." Senator Gelser Blouin had purchased the phone in December 2018, and it was not until a year later, During Ms. Hanson's time off, that she decided this was an issue. Ms. Hanson complied with what Senator Gelser Blouin asked, continuing to stay in touch and work to the extent she was able.

16.

When Ms. Hanson returned to work on December 30, 2019, Senator Gelser
Blouin had made an error on a Legislative Facebook post. It was an easily
correctable error, but Senator Gelser Blouin was very angry about it. She texted
Ms. Hanson: "There are so many consistent errors and that is not sustainable,"
blaming Ms. Hanson for her own error. It seemed like she was actually angry that
Ms. Hanson had attempted to take time off.

17.

Ms. Hanson texted Senator Gelser Blouin, "This is a toxic and emotionally
abusive work environment and no one can be successful within it." Ms. Hanson
told Senator Gelser Blouin she felt she was being forced out of her position. Ms.
Hanson did not know at the time she might be eligible for disability
accommodations, but she hoped her response would start a conversation with
Senator Gelser Blouin. When Defendant Legislature first hired Ms. Hanson, she
intended to make her position with Senator Gelser Blouin a career, but because
Senator Gelser Blouin did not accommodate Ms. Hanson, and punished her for
taking days off, Ms. Hanson felt she was having to choose between her job and
her health.

18.

In December 2019 and January 2020, Defendant Legislature had a policy, rule, or
regulation in place called "Rule 27." At that time, Rule 27 required all employees
of Defendant Legislature to report anyone who disclosed an experience of
harassment, discrimination, or retaliation protected by employment law. Rule 27
required a public hearings process regarding that civil rights process to go

forward, regardless of whether the person impacted by the experience wanted it to go forward or not.

19.

On December 31, 2019, Jessica Knieling, the HR Director for Defendant Legislature, called Ms. Hanson. She told Ms. Hanson that Senator Gelser Blouin reported Ms. Hanson's text message to HR pursuant to Senator Gelser Blouin's obligations under Rule 27. This reporting obligation only applied to disclosures of harassment, discrimination, or retaliation that fall under employment law protections. HR Director Knieling told Ms. Hanson her days off may have been protected under medical leave law, that Ms. Hanson may have been entitled to disability accommodations. This was the first Ms. Hanson learned she might have legal protections for what she was experiencing. HR Director Knieling told Ms. Hanson there would be a mandatory investigation into Ms. Hanson's text to Senator Gelser Blouin, under Rule 27, even though Ms. Hanson did not want that. It seemed like Defendant Legislature was investigating Ms. Hanson in retaliation for complaining about her work environment.

20.

On January 2, 2020, Ms. Hanson emailed HR Director Knieling, "My understanding is that I am legally obligated to comply with the investigation, despite not wanting to or realizing that my text to the senator would prompt one." The HR Director did not respond.

21.

On January 6, 2020, HR Director Knieling and Senator Gelser Blouin required Ms. Hanson to meet with them in person in Senator Gelser Blouin's office in the Capitol. Ms. Hanson was so anxious that morning that she texted Senator Gelser

Blouin that she had not slept the night before and had symptoms of illness in the morning. When Ms. Hanson arrived, her badge did not work in the building. HR Director Knieling and Senator Gelser Blouin told Ms. Hanson she would be restricted from work and that they were taking her phone and computer. Ms. Hanson was crying and so anxious that she did not fully understand what was going on. Ms. Hanson asked how she would be able to manage Senator Gelser Blouin's calendar if she did not have her phone and her computer. They told Ms. Hanson that she could spend a few hours with her computer and legislative email account to gather any evidence to "prove her claims" or materials she needed to support Senator Gelser Blouin while she was on leave.

22.

That same day, January 6, 2020, HR Director Knieling gave Ms. Hanson a memo saying Ms. Hanson was being restricted from the legislative building and to her home during work hours. Although there were no allegations of violations of Rule 27 or any other abusive or dangerous behavior against Ms. Hanson, HR Director Knieling's memo said Ms. Hanson was being restricted to "protect" Senator Gelser Blouin. Senator Gelser Blouin was not restricted in any way in her employment with Defendant Legislature from that day through the day she terminated Ms. Hanson's employment.

23.

At all times relevant to this complaint, Rule 27 has required "independent investigators" to conduct its investigations into allegations of unlawful harassment, discrimination, and retaliation. Defendant Legislature holds these "independent investigators" out as unaffiliated with the legislative branch. Defendant Legislature asserts that "independent investigators" do not provide

legal advice or perform the duties of an attorney to a client. At all times relevant to this complaint, however, all of Defendant Legislature's "independent investigators" have been lawyers who regularly defend employers against harassment, discrimination, and retaliation claims. Between 2019 and the present, none of Defendant Legislature's "independent investigators" have been licensed investigators in violation of ORS 703.993(b) and ORS 703.995. Instead, all of the "independent investigators" have been employment defense attorneys.

24.

On January 10, 2020, Defendant Legislature required Ms. Hanson to meet with an "independent investigator," Brenda Baumgart of the law firm Stoel Rives, for the Rule 27 investigation Senator Gelser Blouin initiated. The investigator Defendant Legislature required Ms. Hanson to meet with is an attorney and not a licensed investigator in violation of ORS 703.993(b) and ORS 703.995. Upon information and belief, this investigator has litigated against employees alleging discrimination, harassment, and retaliation for approximately 30 years.

25.

In the interview with Defendant's unlicensed investigator, Ms. Hanson expressed that she was fearful regarding confidentiality and did not want to go through this process. Early in the meeting, the investigator emailed HR Director Knieling to ask whether Ms. Hanson was required to participate in the interview. HR Director Knieling did not respond. Defendant Legislature's investigator told Ms. Hanson that the investigator would never find that a person with mental health impairments falls under a protected class. Nevertheless, the investigator continued the interview. At the end of the interview, Defendant Legislature sent out a Memo clarifying that a person complaining of illegal conduct under Rule 27 could opt

for a "confidential disclosure and process counseling." Ms. Hanson had not been offered that option and was never offered that option through the 10 months in which Defendant Legislature pursued its investigation.

26.

Around January 13, 2020, Ms. Hanson learned that there was a rumor going around Defendant Legislature's workplace that Ms. Hanson was suspended from work because someone had accused her of sexual assault. Ms. Hanson was shocked, as this clearly was not the case, and she asked HR Director Knieling whether there could be an announcement that Ms. Hanson was on "medical leave" to make it clear she was not accused of wrongdoing. HR Director Knieling said that was not possible because Ms. Hanson was on leave pending an investigation. HR Director Knieling made it clear that Ms. Hanson was restricted to her home and banned from the workplace on the advice of Defendant Legislature's investigator, because of its investigation, not for Ms. Hanson's health. This, again, made it clear that Defendant Legislature were investigating Ms. Hanson in retaliation for her attempts to take medical leave related to her disabilities, for reporting and opposing interference with medical leave related to her disabilities, and/or retaliation for attempting to take medical leave related to her disabilities.

27.

On January 24, 2020, after learning of the Memo released January 10, 2019, Ms. Hanson emailed Defendant Legislature's Equity Officer (LEO), Jackie Sandmeyer, "Under Rule 27, section 11, it is my understanding that you are able to make the investigation confidential if I would like it to be. From my understanding, you are also able to stop the investigation if I so choose. Is that correct?"

28.

On January 27, 2020, LEO Sandmeyer responded, "I'll talk to the investigators about the complaint and get back to you about what options you have." Later that day, LEO Sandmeyer emailed that because Senator Gelser Blouin had made the complaint against herself under Defendant Legislature's mandatory reporting requirements through Rule 27, the investigator was moving forward with the investigation no matter what Ms. Hanson wanted. Essentially, because Senator Gelser Blouin complained against herself, the investigator was giving Senator Gelser Blouin any benefits under Rule 27 to "complainants," although Senator Gelser Blouin was the one accused, by herself, of illegal retaliation.

29.

On January 29, 2020, LEO Sandmeyer reiterated that if Ms. Hanson declined to participate in Defendant Legislature's investigation, the investigation would still go forward.

30.

On February 13, 2020, Defendant Legislature's investigator interviewed Ms. Hanson again. Ms. Hanson complied with the interview, fearful that it seemed Defendant Legislature appeared to be investigating Ms. Hanson under the guise of responding to Senator Gelser Blouin's complaint about herself, although Ms. Hanson was accused of no wrongdoing.

31.

On March 12, 2020, Defendant Legislature's investigator required Ms. Hanson to meet again for six hours. Ms. Hanson began crying and exhibiting severe distress during this meeting. Ms. Hanson expressed that this process had triggered suicidal thinking for her. The investigator provided no accommodations for Ms. Hanson

through the investigation process, although Ms. Hanson showed and reported severe symptoms.

32.

On July 2, 2020, Ms. Hanson learned a hearing was set for July 15, 2020, in front of the Senate Conduct Committee regarding Defendant Legislature's investigation into Senator Gelser Blouin. Ms. Hanson received an "Investigation Report" from Defendant Legislature's unlicensed investigator. As part of the report, the unlicensed investigator demonstrated her bias against people with mental health disabilities, recommending that leave for "mental health" does not qualify for protection under Oregon medical leave law.

33.

On July 3, 2020, Ms. Hanson asked for a postponement of the public hearing and her opportunity to respond to Defendant Legislature's biased investigation report. On July 7, 2020, the Senate Conduct Committee, which at all times was acting on behalf of Defendant, told Ms. Hanson that the conduct hearing, including determinations about whether Rule 27 applied to Ms. Hanson's attempts to take protected leave for her mental health disabilities, would go on with or without her and that she could not have an extension to respond. That day, Ms. Hanson again asked for a postponement in the hearing to accommodate her disabilities and because her doctor advised her she may have COVID-19. The Senate Conduct Committee denied her request. The Senate Conduct Committee now said Ms. Hanson was not required to attend the hearing, but it would go on without her. Because Ms. Hanson was the one suspended from work, not Senator Gelser Blouin, Ms. Hanson was fearful that not attending could impact her employment.

34.

On July 15, 2020, the Senate Conduct Committee held a public hearing, questioning Ms. Hanson, and asking her to provide evidence. At that hearing, LEO Sandmeyer testified, "The only authority I have to put a party on administrative leave would be related to a Respondent as an interim measure. So, I could say that a responding party, you know, that I would have concern from my expertise or from information an investigator has, to say that that person may cause future reoccurrence of harm to an individual or may cause sort of a larger concern for harm to the capitol community." Although Ms. Hanson had not been accused of anything and was not a "Respondent," this again confirmed that Ms. Hanson, as the one suspended from work, was being investigated in retaliation for her attempts to take medical leave related to her disabilities, for reporting and opposing interference with medical leave related to her disabilities, and/or retaliation for attempting to take medical leave related to her disabilities.

35.

Also at the July 15, 2020, hearing, the Senate Conduct Committee acknowledged that it had not considered any of Ms. Hanson's disabilities in its investigation and said Ms. Hanson would be required to initiate another public hearing process in order for the Senate Conduct Committee to consider her disabilities.

36.

On September 24, 2020, LEO Sandmeyer testified before Defendant Legislature that in the previous year, Defendant Legislature had paid over $600,000 to outside investigators under Rule 27. Upon information and belief, Defendant Legislature paid that $600,000, for investigation of only 3-4 cases under Rule 27. Upon information and belief, Defendant Legislature paid that $600,000, to insurance

defense lawyers, unlicensed as investigators, whose experience was in litigating against employees harmed by discrimination, harassment, and retaliation, like Ms. Hanson.

37.

On October 7, 2020, the Senate Conduct Committee again held a public hearing, discussing Ms. Hanson's medical issues and whether they qualified her for protected class status under Rule 27. The Senate Conduct Committee voted that Ms. Hanson was protected under medical leave law. Nevertheless, relying on the unlicensed "independent investigator," the Senate Conduct Committee voted that Ms. Hanson was not protected under Rule 27.

38.

Later, on October 7, 2020, Senator Gelser Blouin terminated Ms. Hanson's employment, accusing her of "errors" with no clarification. The only example of an "error" Senator Gelser Blouin pointed to is an error Senator Gelser Blouin herself made. Senator Gelser Blouin also accused Ms. Hanson of deleting emails from her inbox. At Senator Gelser Blouin's instruction, when Ms. Hanson was suspended from work on January 6, 2020, Ms. Hanson did delete "sent" notifications of emails Senator Gelser Blouin and HR Director Knieling instructed her to forward to avoid crowding Senator Gelser Blouin's outbox. Ms. Hanson did not delete original emails.

39.

On December 29, 2020, Plaintiff filed a complaint with the Bureau of Labor and Industries and the Equal Employment Opportunity Commission.

40.

On April 21, 2021, the Bureau of Labor and Industries issued Plaintiff a 90-day right-to sue-letter.

41.

Around July 2021, Ms. Hanson learned that HR Director Knieling and others had referred to her as "crazy" because of her disabilities and that Defendant Legislature's Rule 27 investigation into Senator Gelser Blouin's complaint against herself lasted 10 months in part because Defendant Legislature failed to pay its unlicensed investigator in May and September 2020.

42.

Defendant's actions and inactions have caused Plaintiff harm such as wage loss, medical expenses, reputational harm, lifetime income loss because of reputational damage, and severe emotional distress such as betrayal, stress, anxiety, shame, humiliation, degradation, sleeplessness, disruption to her normal routines, career interruption, and so much fear and hopelessness that Plaintiff experienced suicidal thinking as a result of having an employer she was dedicated to turn against her and force her through a public hearings process regarding medical diagnoses for her disabilities. Compensation for these harms should be determined by a jury at trial.

### FIRST CLAIM FOR RELIEF –DISABILITY DISCRIMINATION VIOLATION OF OREGON LAW

43.

Plaintiff incorporates paragraphs 1-42 herein as though fully set forth in this claim and each count included in this claim.

44.

At all times, Senator Gelser Blouin; the members of the Senate Conduct

Committee, individually and collectively; and, Defendant Legislature's HR

Director, LEO, investigator, and other employees and/or agents were acting in the

scope and course of their employment or agency with Defendant Legislature.

COUNT 1: ADVERSE EMPLOYMENT ACTIONS
VIOLATION OF ORS 659A.112

45.

Defendant Legislature violated ORS 659A.112 by taking one or more of the

following adverse employment actions:

a) On January 6, 2020, in limiting and/or segregating Plaintiff by restricting

her from the workplace and limiting her movement during the workday to

her home because of her disabilities;

b) On July 15 and October 7, 2020, in holding public hearings regarding

Plaintiff's attempts to take protected leave for her disabilities; and/or

c) On October 7, 2020, in terminating Plaintiff's employment because of her

disability.

COUNT 2: RETALIATION
VIOLATION OF ORS 659A.109
(IN THE ALTERNATIVE TO COUNTS 1, 3, AND 4)

46.

Defendant Legislature violated ORS 659A.109 by retaliating against Plaintiff for

attempting to take protected leave for her mental health disabilities, in one or

more of the following:

a) On January 6, 2020, in limiting and/or segregating Plaintiff by restricting her from the workplace and limiting her movement during the workday to her home because she reported Senator Gelser Blouin's interference with and retaliation for Ms. Hanson's attempts to take leave related to her mental health disability;

b) On July 15 and October 7, 2020, in holding public hearings regarding Plaintiff's attempts to take leave for her disabilities and her reports of retaliation and interference; and/or

c) On October 7, 2020, in terminating Plaintiff's employment because she reported Senator Gelser Blouin's interference with and retaliation for Plaintiff's attempts to take medical leave for her mental health disabilities.

COUNT 3: FAILURE TO ACCOMMODATE
VIOLATION OF ORS 659A.112
(IN THE ALTERNATIVE TO COUNTS 1, 2, AND 4)

47.

Defendant Legislature violated ORS 659A.112 in failing to accommodate Plaintiff's disabilities in one or more of the following:

a) Interfering with time off Ms. Hanson needed related to her disabilities between December 17, 2019, and December 30, 2019;

b) On January 6, 2020, in suspending Ms. Hanson from work after she reported that her work environment was not safe, rather than accommodate her disabilities;

c) Between January 6 and October 7, 2020, in hiring an unlicensed investigator to investigate Ms. Hanson's attempts to take protected leave related to her disabilities, without allowing Ms. Hanson to stop, delay,

engage in informal reconciliation, or receive other accommodation related to that investigation;

d) Refusing to extend Ms. Hanson's time to respond to the investigative report dated July 2, 2020, despite her request for accommodation.

e) Refusing to delay the July 15, 2020, public hearing despite Ms. Hanson's requests for accommodation;

f) Discussing in public hearings on July 15, 2020, and October 7, 2020, whether Ms. Hanson's physical and/or mental health conditions qualified her for protection under employment law and determining defendant legislature would not protect the conditions because they are mental in nature; and/or

g) Terminating Ms. Hanson, rather than accommodate her, using "errors" made by someone else as a pretext for that termination. Ms. Hanson's termination was a direct result and culmination of Defendant's other failure(s) to accommodate her.

COUNT 4: DISPARATE IMPACT
VIOLATION OF ORS 659A.112
(IN THE ALTERNATIVE TO COUNTS 1, 2, AND 3)

48.

Defendant Legislature violated ORS 659A.112 in creating, interpreting, and/or implementing a facially neutral policy, Rule 27, at the time of the facts alleged above in such a way that it adversely impacted employees, including Plaintiff, with mental health disabilities, including one or more of the following adverse impacts:

a) In having the effect of requiring employees to report other employees, including Plaintiff, for talking about harassment, discrimination, or retaliation related to mental health disabilities;

b) In requiring, allowing, or recommending Defendant limit, segregate, or suspend people with mental health disabilities from the workplace, restricting them to their homes as a condition of employment if they talk about discrimination, harassment, and/or retaliation;

c) In contributing to hiring employment defense attorneys and holding them out as "independent investigators," though they hold no investigator license, in violation of Oregon law, in order for Defendant to discredit, undermine, and/or retaliate against employees with mental health disabilities, including Plaintiff, for talking about harassment, discrimination, or retaliation;

d) In requiring investigations into mental health conditions, including Plaintiff's mental health disability, to move forward after the employee with the mental health condition asks it to stop, without offering alternative measures such as confidential reconciliation, offered to employees without mental health disabilities; and/or

e) In setting a process of automatic public hearings after an employee talks about allegations of potential unlawful harassment, discrimination, or retaliation, resulting in mandatory public hearings about employee mental health disabilities and/or attempts to take protected leave, including Plaintiff's, while employees who allege wrongdoing that does not rise to the level of unlawful employment action are allowed alternative and confidential options.

49.

Defendant's actions and inactions described above, and incorporated into Plaintiff's First Claim, Counts 1-4, have caused Plaintiff harm such as wage loss, medical expenses, reputational harm, lifetime income loss because of reputational damage, and severe emotional distress such as betrayal, stress, anxiety, shame, humiliation, degradation, sleeplessness, disruption to her normal routines, career interruption, and so much fear and hopelessness that Plaintiff experienced suicidal thinking as a result of having an employer she was dedicated to turn against her and force her through a public hearings process regarding medical diagnoses for her disabilities. Compensation for these harms should be determined by a jury at trial.

50.

For Plaintiff's First Claim, Counts 1-4 individually and collectively, Plaintiff is entitled to prevailing party costs and reasonable attorney fees and costs under ORS 659A.885.

## SECOND CLAIM FOR RELIEF – DISABILITY DISCRIMINATION
### VIOLATION OF FEDERAL LAW

Plaintiff incorporates paragraphs 1-50 as though fully set forth herein into this claims and each count included in this claim.

51.

At all times, Senator Gelser Blouin; the members of the Senate Conduct Committee, individually and collectively; and, Defendant Legislature's HR Director, LEO, investigator, and other employees and/or agents were acting in the scope and course of their employment or agency with Defendant Legislature.

COUNT 1: ADVERSE EMPLOYMENT ACTIONS

52.

Defendant Legislature violated 42 USC § 12111, *et seq.* and/or 29 U.S.C. 701, *et seq.*, by taking one or more of the following adverse employment actions:

a)  On January 6, 2020, in limiting and/or segregating Plaintiff by restricting her from the workplace and limiting her movement during the workday to her home because of her disabilities;

b)  On July 15 and October 7, 2020, in holding public hearings regarding Plaintiff's attempts to take leave for her disabilities; and/or

c)  On October 7, 2020, in terminating Plaintiff's employment because of her disability.

COUNT 2: FAILURE TO ACCOMMODATE
(IN THE ALTERNATIVE TO COUNTS 1 AND 3)

53.

Defendant Legislature violated 42 USC § 12111, *et seq.* and/or 29 U.S.C. 701, *et seq.*, by failing to accommodate Plaintiff's disabilities in one or more of the following:

a)  Interfering with time off Ms. Hanson needed related to her disabilities between December 17, 2019, and December 30, 2019;

b)  On January 6, 2020, in suspending Ms. Hanson from work after she reported that her work environment was not safe, rather than accommodate her disabilities;

c)  Between January 6 and October 7, 2020, in hiring an unlicensed investigator to investigate Ms. Hanson's attempts to take protected leave related to her disabilities, without allowing Ms. Hanson to stop, delay,

engage in informal reconciliation, or receive other accommodation related to that investigation;

d) Refusing to extend Ms. Hanson's time to respond to the investigative report dated July 2, 2020, despite her request for accommodation;

e) Refusing to delay the July 15, 2020, public hearing despite Ms. Hanson's requests for accommodation;

f) Discussing in public hearings on July 15, 2020, and October 7, 2020, whether Ms. Hanson's physical and/or mental health conditions qualified her for protection under employment law and determining Defendant Legislature would not protect the conditions because they are mental in nature; and/or

g) Terminating Ms. Hanson, rather than accommodate her, using "errors" made by someone else as a pretext for that termination. Ms. Hanson's termination was a direct result and culmination of Defendant's other failure(s) to accommodate her.

## COUNT 3: DISPARATE IMPACT
### (IN THE ALTERNATIVE TO COUNTS 1 AND 2)

54.

Defendant Legislature violated 42 USC § 12111, *et seq.* and/or 29 U.S.C. 701, *et seq.*, in creating, interpreting, and/or implementing a facially neutral policy, Rule 27, at the time of the facts alleged above in such a way that it adversely impacted employees, including Plaintiff, with mental health disabilities, including one or more of the following adverse impacts:

f) In having the effect of requiring employees to report other employees, including Plaintiff, for talking about harassment, discrimination, or retaliation related to mental health disabilities;

g) In requiring, allowing, or recommending Defendant limit, segregate, or suspend people with mental health disabilities from the workplace, restricting them to their homes as a condition of employment if they talk about discrimination, harassment, and/or retaliation;

h) In contributing to hiring employment defense attorneys and holding them out as "independent investigators," though they hold no investigator license, in violation of Oregon law, in order for Defendant to discredit, undermine, and/or retaliate against employees with mental health disabilities, including Plaintiff, for talking about harassment, discrimination, or retaliation;

i) In requiring investigations into mental health conditions, including Plaintiff's mental health disability, to move forward after the employee with the mental health condition asks it to stop, without offering alternative measures such as confidential reconciliation, offered to employees without mental health disabilities; and/or

j) In setting a process of automatic public hearings after an employee talks about allegations of potential unlawful harassment, discrimination, or retaliation, resulting in mandatory public hearings about employee mental health disabilities, including Plaintiff's, while employees who allege wrongdoing that does not rise to the level of unlawful employment action are allowed alternative and confidential options.

55.

Defendant's actions and inactions described above, and incorporated into Plaintiff's Second Claim, Counts 1-3, have caused Plaintiff harm such as wage loss, medical expenses, reputational harm, lifetime income loss because of reputational damage, and severe emotional distress such as betrayal, stress, anxiety, shame, humiliation, degradation, sleeplessness, disruption to her normal routines, career interruption, and so much fear and hopelessness that Plaintiff experienced suicidal thinking as a result of having an employer she was dedicated to turn against her and force her through a public hearings process regarding medical diagnoses for her disabilities. Compensation for these harms should be determined by a jury at trial.

56.

For Plaintiff's Second Claim, Counts 1-3 individually and collectively, Plaintiff is entitled to reasonable attorney fees and costs under 42 USC § 12205.

### THIRD CLAIM FOR RELIEF – DISABILITY RETALIATION VIOLATION OF 42 U.S.C. § 12203

57.

Plaintiff incorporates paragraphs 1- 56 as though fully set forth herein.

58.

At all times, Senator Gelser Blouin; the members of the Senate Conduct Committee, individually and collectively; and, Defendant Legislature's HR Director, LEO, investigator, and other employees and/or agents were acting in the scope and course of their employment or agency with Defendant Legislature.

59.

Defendants violated 42 USC § 12203 by retaliating against Plaintiff for attempting to take protected leave for her mental health disabilities, reporting unlawful employment practices, and/or opposing unlawful employment practices in one or more of the following:

a) On January 6, 2020, in limiting and/or segregating Plaintiff by restricting her from the workplace and limiting her movement during the workday to her home because she reported Senator Gelser Blouin's interference with and retaliation for Ms. Hanson's attempts to take leave related to her mental health disability;

b) On July 15 and October 7, 2020, in holding public hearings regarding Plaintiff's attempts to take leave for her disabilities and her reports of retaliation and interference; and/or

c) On October 7, 2020, in terminating Plaintiff's employment because she reported Senator Gelser Blouin's interference with and retaliation for Plaintiff's attempts to take medical leave for her mental health disabilities.

60.

Defendants' actions and inactions have caused Plaintiff harm such as wage loss, medical expenses, reputational harm, lifetime income loss because of reputational damage, and severe emotional distress such as betrayal, stress, anxiety, shame, humiliation, degradation, sleeplessness, disruption to her normal routines, career interruption, and so much fear and hopelessness that Plaintiff experienced suicidal thinking as a result of having an employer she was dedicated to turn against her and force her through a public hearings process regarding medical diagnoses for

her disabilities. Compensation for these harms should be determined by a jury at trial.

61.

Plaintiff is entitled to reasonable attorney fees and costs under 42 USC § 12205.


**FOURTH CLAIM FOR RELIEF – MEDICAL LEAVE INTERFERENCE VIOLATION OF ORS 659A.183**

62.

Plaintiff repeats and realleges paragraphs 1-61 as though fully set forth.

63.

At all times relevant to this Complaint, Senator Gelser Blouin was acting in the scope of her employment as an agent, employee, or proxy for Defendant Legislature.

64.

Defendant Legislature violated ORS 659A.183 by interfering with Plaintiff's medical leave in one or more of the following:

a) In opposing Plaintiff's attempt to be paid for medical leave taken in October 2019;

b) In telling Plaintiff it was not convenient to take medical leave on December 18, 2019;

c) In failing to respond to Plaintiff's report of acute illness symptoms on December 18, 2019, and continuing to require her to work; and/or

d) Knowing Plaintiff's therapist said medical leave was urgent, in requiring Plaintiff to respond to work issues between December 18-30, 2019.

65.

Plaintiff is entitled to back pay, prevailing party costs, and reasonable attorney
fees and costs under ORS 659A.885.

**FIFTH CLAIM FOR RELIEF – MEDICAL LEAVE INTERFERENCE
VIOLATION OF 29 USC § 2601 ET SEQ**

66.

Plaintiff repeats and realleges paragraphs 1-65 as though fully set forth.

67.

At all times relevant to this Complaint, Senator Gelser Blouin was acting in the
scope of her employment as an agent, employee, or proxy for Defendant
Legislature.

68.

Defendant Legislature violated 29 USC § 2601 *et seq.* by interfering with
Plaintiff's medical leave in one or more of the following:

a) In telling Plaintiff it was not convenient to take medical leave on
   December 18, 2019;

b) In failing to respond to Plaintiff's report of acute illness symptoms on
   December 18, 2019, and continuing to require her to work;

c) Knowing Plaintiff's therapist said medical leave was urgent, in requiring
   Plaintiff to respond to work issues between December 18-30, 2019.

69.

Plaintiff is entitled to back pay, and reasonable attorney fees and costs under 29
U.S.C. § 2617.

## SIXTH CLAIM FOR RELIEF – MEDICAL LEAVE RETALIATION
## VIOLATION OF ORS 659A.183

### 70.

Plaintiff repeats and realleges paragraphs 1-69 as though fully set forth.

### 71.

At all times, Senator Gelser Blouin; the members of the Senate Conduct Committee, individually and collectively; and, Defendant Legislature's HR Director, LEO, investigator, and other employees and/or agents were acting in the scope and course of their employment or agency with Defendant Legislature.

### 72.

Defendant Legislature violated ORS 659A.183 by retaliating against Plaintiff for taking medical leave in one or more of the following:

a) In opposing Plaintiff's attempt to be paid for medical leave taken in October 2019;

b) In accusing Plaintiff of "errors" that were actually Senator Gelser Blouin's error after Plaintiff attempted to take medical leave;

c) In suspending Plaintiff from work after she attempted to take medical leave and reported interference with that leave;

d) In refusing to stop the Rule 27 hearing process after Plaintiff expressed that she did not wish it to go forward;

e) In holding public hearings regarding Plaintiff's protected class status when she did not wish to participate in any investigation process;

f) In refusing to reset public hearings regarding Plaintiff's protected class status when Plaintiff requested accommodation of a short delay in hearing date;

g) In requiring Plaintiff to go through three interviews with an unlicensed investigator when she asked for an investigation not to happen;

h) In considering allegations regarding Plaintiff's performance in its investigation regarding Senator Gelser Blouin; and/or

i) In terminating Plaintiff for reporting interference with medical leave related to her disabilities and retaliation for attempting to take medical leave.

73.

Plaintiff is entitled to back pay, prevailing party costs, and reasonable attorney fees and costs under ORS 659A.885.

### SEVENTH CLAIM FOR RELIEF – MEDICAL LEAVE RETALIATION VIOLATION OF 29 USC § 2601 ET SEQ

74.

Plaintiff repeats and realleges paragraphs 1-73 as though fully set forth.

75.

At all times, Senator Gelser Blouin; the members of the Senate Conduct Committee, individually and collectively; and, Defendant Legislature's HR Director, LEO, investigator, and other employees and/or agents were acting in the scope and course of their employment or agency with Defendant Legislature.

76.

Defendant Legislature violated 29 USC § 2601 *et seq.* by retaliating against Plaintiff for taking medical leave in one or more of the following:

a) In accusing Plaintiff of "errors" that were actually Senator Gelser Blouin's error after Plaintiff attempted to take medical leave;

b) In suspending Plaintiff from work after she attempted to take medical leave and reported interference with that leave;

c) In refusing to stop the Rule 27 hearing process after Plaintiff expressed that she did not wish it to go forward;

d) In holding public hearings regarding Plaintiff's protected class status when she did not wish to participate in any investigation process;

e) In refusing to reset public hearings regarding Plaintiff's protected class status when Plaintiff requested accommodation of a short delay in hearing date;

f) In requiring Plaintiff to go through three interviews with an investigator when she asked for an investigation not to happen;

g) In considering allegations regarding Plaintiff's performance in its investigation regarding Senator Gelser Blouin; and/or

h) In terminating Plaintiff for reporting interference with medical leave related to her disabilities and retaliation for attempting to take medical leave.

77.

Plaintiff is entitled to back pay and reasonable attorney fees and costs under 29 U.S.C. § 2617.

**EIGHTH CLAIM FOR RELIEF – WHISTLEBLOWER RETALIATION VIOLATION OF ORS 659A.199**

78.

Plaintiff repeats and realleges paragraphs 1-77 as though fully set forth.

79.

At all times, Senator Gelser Blouin; the members of the Senate Conduct Committee, individually and collectively; and, Defendant Legislature's HR Director, LEO, investigator, and other employees and/or agents were acting in the scope and course of their employment or agency with Defendant Legislature.

80.

Defendants violated ORS 659A.199 in one or more of the following:

a) In suspending Plaintiff from work;

b) In pursuing a purported investigation of Senator Gelser Blouin with an unlicensed investigator who stated she did not believe mental health disabilities are protected under the law;

c) In continuing to pursue an investigation regardless of Plaintiff's requests to follow an informal reconciliation process;

d) In holding public hearings regarding whether Plaintiff's health conditions and impairments fall under a protected class; and/or

e) In terminating Plaintiff for reporting interference with medical leave related to her disabilities and retaliation for attempting to take medical leave.

All and each of these because Plaintiff reported in good faith information that she believed to be evidence of a violation of a state or federal law, rule, or regulation by reporting and continuing to report between December 30, 2019, and October 7, 2020, she believed Defendant interfered with medical leave related to her disabilities.

81.

Defendant's actions and inactions have caused Plaintiff harm such as wage loss, medical expenses, reputational harm, lifetime income loss because of reputational damage, and severe emotional distress such as betrayal, stress, anxiety, shame, humiliation, degradation, sleeplessness, disruption to her normal routines, career interruption, and so much fear and hopelessness that Plaintiff experienced suicidal thinking as a result of having an employer she was dedicated to turn against her and force her through a public hearings process regarding medical diagnoses for her disabilities. Compensation for these harms should be determined by a jury at trial.

82.

Plaintiff is entitled to prevailing party costs and reasonable attorney fees and costs under ORS 659A.885.

### NINTH CLAIM FOR RELIEF – PUBLIC EMPLOYER WHISTLEBLOWER RETALIATION
### VIOLATION OF ORS 659A.203

83.

Plaintiff repeats and realleges paragraphs 1-82 as though fully set forth.

84.

At all times, Senator Gelser Blouin; the members of the Senate Conduct Committee, individually and collectively; and, Defendant Legislature's HR Director, LEO, investigator, and other employees and/or agents were acting in the scope and course of their employment or agency with Defendant Legislature.

85.

Defendants violated ORS 659A.203 in one or more of the following:

a) In suspending Plaintiff from work;

b) In pursuing a purported investigation of Senator Gelser Blouin with an investigator who stated she did not believe mental health disabilities are protected under the law;

c) In continuing to pursue an investigation regardless of Plaintiff's requests to follow an informal reconciliation process;

d) In holding public hearings regarding whether Plaintiff's medical diagnoses fall under a protected class; and/or

e) In terminating Plaintiff for reporting interference with medical leave related to her disabilities and retaliation for attempting to take medical leave.

All because Plaintiff in good faith reported information that she believed to be evidence of a violation of a law, rule, regulation, mismanagement, gross waste of funds, or abuse of authority.

86.

Defendant's actions and inactions have caused Plaintiff harm such as wage loss, medical expenses, reputational harm, lifetime income loss because of reputational damage, and severe emotional distress such as betrayal, stress, anxiety, shame, humiliation, degradation, sleeplessness, disruption to her normal routines, career interruption, and so much fear and hopelessness that Plaintiff experienced suicidal thinking as a result of having an employer she was dedicated to turn against her and force her through a public hearings process regarding medical diagnoses for her disabilities. Compensation for these harms should be determined by a jury at trial.

87.

Plaintiff is entitled to prevailing party costs and reasonable attorney fees and costs under ORS 659A.885.

_____

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

a. Fair and reasonable economic and noneconomic damages in an amount to be determined by the jury;

b. For attorney fees under ORS 659A.885, 42 USC § 12205, and 29 U.S.C. § 2617;

c. For prevailing party costs under ORS 659A.885;

d. For pre-judgment and post-judgment interest; and

e. For reasonable costs and disbursements incurred in this action.

DATED this 1st day of February, 2022.

_____

Meredith Holley, OSB No. 125647
meredith@erisresolution.com
Shiwanni Johnson (she/her), OSB No. 214106
Shiwanni@ErisResolution.com
LAW OFFICE OF MEREDITH HOLLEY
207 E 5th Avenue, Suite 254
Eugene, OR 97401
Telephone: (458) 221-2671
Fax: (833) 352-3615
Attorneys for Plaintiff

# CERTIFICATE OF SERVICE

I certify that I caused to be served a true and correct copy of PLAINTIFF'S AMENDED COMPLAINT on the following person(s) in the manner indicated below at the following address(es):

Ellen F. Rosenblum
Attorney General
Marc Abrams, OSB No. 890149
Marc.abrams@doj.state.or.us
Assistant Attorney-in-Charge
Jessica Spooner, OSB No. 105919
Jessica.spooner@doj.state.or.us
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
   *Marc Abrams as Attorney for Defendants State of Oregon, Legislative Assembly; State of Oregon, Senate Committee on Conduct; Floyd Prozanski, and Chuck Thomsen and Jessica Spooner as Attorney for Sara Gelser*


___x___   by Pacer e-filing system transmission on February 1, 2022.

___x___   by email to the addresses as indicated above on February 1, 2022.

_____   by facsimile to the facsimile number indicated above on _____ 2021.

_____   by hand delivery on _____ 2021.


By:____*s/ Meredith Holley*_____
         Meredith Holley, Attorney at Law
         OSB No. 125647
         458-221-2671
         833-352-3651 (fax)
         meredith@erisresolution.com


**LAW OFFICE OF MEREDITH HOLLEY**
**207 East 5th Avenue, Suite 254**
**Eugene, OR 97401**
**458-221-2671**