IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LAURA HANSON**, | Case No. 3:21-cv-780-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **STATE OF OREGON, LEGISLATIVE ASSEMBLY**, | |
| Defendant. | |

Meredith A. Holley, LAW OFFICE OF MEREDITH HOLLEY, 207 E. Fifth Avenue, Suite 254, Eugene, OR 97401; and Rebecca Cambreleng and Ashley A. Marton, CAMBRELENG & MARTON LLC, 3518 S. Corbett Ave, First Floor, Portland, OR 97239. Of Attorneys for Plaintiff.

Marc Abrams and Allie M. Boyd, OREGON DEPARTMENT OF JUSTICE, 100 SW Market Street, Portland, OR 97201. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Laura Hanson brings this action against her former employer, the Legislative Assembly of the State of Oregon (the Legislature). In her Second Amended Complaint (SAC) (ECF 65), Hanson asserts eleven claims under state and federal law, including for disability discrimination, disability retaliation, interference with medical leave, medical leave retaliation, whistleblower retaliation, unlawful termination for opposing an unlawful practice, and civil rights violations.

Before the Court is the Legislature's Second Motion for Summary Judgment (Motion), which addresses the inclusion in this lawsuit of Hanson's three-week tenure of employment in January 2023 with Oregon State Rep. Khanh Pham (a period the Court will refer to as "the Pham Phase"). Relevant to the Pham Phase are Counts One and Three of Hanson's First Claim, which she brings under Oregon Revised Statutes (ORS) § 659A.112.[1] Hanson alleges disability discrimination in the termination of her employment with Rep. Pham (Count One) and alleges disability discrimination based on a failure to accommodate Hanson's disabilities (Count Three). For the reasons stated below, the Court denies the Legislature's Motion.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the

---

[1] As discussed below, the SAC indicates that Hanson also asserts her Ninth, Tenth, and Eleventh Claims based on actions alleged to have occurred during the Pham Phase. Hanson, however, has since withdrawn her Tenth and Eleventh Claims and confirms that she is not alleging events arising from the Pham Phase in support of her Ninth Claim.

non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted).

## BACKGROUND

The Legislature's Motion addresses the allegations in the SAC regarding Hanson's three-week tenure of employment with Rep. Pham in January 2023. Hanson applied for a job with Rep. Pham's office on or about December 20, 2022, and was hired less than a day and a half later.[2] Hanson's first day on the job was January 3rd or 4th.[3] Hanson, who had previously worked as Chief of Staff for Oregon State Sen. Sara Gelser Blouin, was hired by Rep. Pham's office to work under Rep. Pham's Chief of Staff, Mr. Robin Ye.[4] Hanson's position was designated "Legislative Assistant 2."[5]

On Hanson's first day on the job for Rep. Pham, or when she was being prepped for onboarding, Hanson informed Rep. Pham that she had disabilities, including that she had Attention Deficit Hyperactivity Disorder.[6] Within a week of beginning work, Hanson informed Ye that because of her disabilities, she needed to receive instructions in writing.[7] Hanson testified about a discussion she had with Ye on January 3rd or 4th as follows: "I let him know that because of—because of my disabilities I needed to have my instructions for my position, my

---

[2] Third Hanson Dep. (ECF 71-1) 11:24-12:23.

[3] *Id.* 22:2-7; *see also* ECF 78-1 (email correspondence confirming Hanson's start date).

[4] Third Hanson Dep. (ECF 71-1) 17:9-11; Pham Dep. (ECF 79-2) 38:14-16.

[5] Pham. Dep (ECF 71-4) 14:20-21.

[6] *Id.* 10:12-11:3.

[7] Ye Dep. (ECF 79-3) 26:19-27:1; ECF 79-3 at 17.

PAGE 3 – OPINION AND ORDER

responsibilities, whoever I report to, I need those in writing[.]"[8] Hanson also asked that she be given a modified work schedule and told Ye that because of Hanson's irritable bowel syndrome, she occasionally might need to step out of the room.[9] In addition to in-person discussions about her need for accommodations, Hanson also communicated that need "many times in writing" to Rep. Pham or Ye.[10] Hanson testified that Rep. Pham and Ye had asked for "grace" through January and promised her that "in February . . . they would be able to discuss my accommodations, specifically the one where I requested written instruction of my responsibilities and their expectations of me and, you know, an explanation of who I reported to, who I reported to about what, who was in charge of decisions for my time."[11]

On January 10th, Hanson emailed Interim Human Resources Director Jessica Knieling about her need for accommodation for her disabilities.[12] Hanson wrote in part:

> [A]s you know, I have a number of disabilities, and I want to follow all of the available procedures to make sure I'm accommodated. I've talked with Rep. Pham about my disabilities . . . and we are working together on accommodations. What other procedures are available to me? We want to be sure we're following your office's process.[13]

In reply, Knieling emailed Hanson an Employee Accommodation Request form and health care provider form.[14] In her email, Knieling stated that she and Susan Hoeye (the person in the HR

---

[8] Third Hanson Dep. (ECF 71-1) 24:11-16.

[9] *Id.* 24:11-25.

[10] Third Hanson Dep. (ECF 79-4) 37:19-38:19.

[11] *Id.* 51:3-14.

[12] ECF 78-2 at 1-2.

[13] *Id.* at 2.

[14] *Id.* at 1.

PAGE 4 – OPINION AND ORDER

office who was "on point . . . for handling accommodations") would be "happy to explore any accommodations to assist you."[15] Knieling explained that because of the HR office's policy of not sharing medical information with supervisors, Hoeye would work directly with Hanson "and then advise Rep. Pham of requested or needed accommodations."[16]

Hanson only partially filled out the accommodation paperwork Knieling sent her and never turned it in.[17] Hanson testified that she did not submit the paperwork because, as discussed, Ye and Rep. Pham had asked for "grace" during January and promised Hanson that in February they would be able to discuss Hanson's needed accommodations.[18]

Rep. Pham testified that Hanson was given her assignments in one-on-one or staff meetings.[19] When assignments were given during staff meetings, staff would generally write down the "action steps"; those steps were also sometimes written down during one-on-one meetings.[20] If Rep. Pham gave Hanson an assignment during a one-on-one meeting, Rep. Pham would also try to write the actions steps down in a Google document or in a chat app.[21] In addition, if assignments were given during one-on-one meetings, Rep. Pham would follow up by phone or Slack (a messaging app) if deadlines were missed.[22] Rep. Pham recalled that early on in

---

[15] *Id.* at 1.

[16] *Id.*

[17] Third Hanson Dep. (ECF 71-1) 37:19-22, 38:16-19; ECF 78-3.

[18] Third Hanson Dep. (ECF 79-4) 50:24-51:25.

[19] Pham Dep. (ECF 71-4) 21:10-22:16.

[20] *Id.* 21:22-22:9.

[21] *Id.* 21:16-21.

[22] *Id.* 21:18-21.

PAGE 5 – OPINION AND ORDER

Hanson's employment, Hanson texted Rep. Pham to thank her for giving clear deadlines and being specific about assignments.[23]

On January 25, 2023, responding to a request from Rep. Pham, Ye sent Rep. Pham an email stating his "concerns about [Hanson's] performance."[24] Ye wrote that "[Hanson] has not demonstrated proficiency in completing tasks in a timely fashion and/or usable status."[25] Ye provided multiple examples, including: an assignment to review "a fully drafted social media post" that took Hanson 8 hours to complete; a bill draft that Hanson had volunteered to write that was delivered "incomplete and unusable"; a committee briefing that Hanson's supervisor had repeatedly requested to see and that Hanson provided only 20 minutes before the meeting for which it had been prepared; and a one-paragraph staff biography that Hanson was given more than two weeks to complete and which Hanson "declined to submit" by the deadline.[26] Ye stated that Hanson "struggles communicating expected work project delivery times [and] frequently informs [that] more time is needed and blows by additional deadlines, even deadlines offered by [Hanson]."[27] Ye also expressed concerns about Hanson's failure to arrive at the office at an agreed-upon time.[28]

In addition to Hanson having difficulty with assignments and timeliness, Ye also stated that Hanson had "difficulty respecting chain of command" and had "gone over [her] supervisor's

---

[23] *Id.* 11:7-17.

[24] Ye Dep. (ECF 79-3) 41:12-42:5; ECF 79-3 at 13-16.

[25] ECF 79-3 at 13.

[26] *Id.* at 13-14.

[27] *Id.* at 14.

[28] *Id.* at 14-15.

PAGE 6 – OPINION AND ORDER

head on [a] workplan item, [without] informing [the] supervisor."[29] Ye also noted Hanson gave "the strong impression that [she] do[es] not understand the specific job" for which she was hired and had "difficulty accepting parameters of her decision-making ability for this office."[30]

Also on January 25th, Legislative Director Doyle Canning emailed Rep. Pham about her experience working with Hanson.[31] Canning stated that Hanson "expressed explicitly that she would like to direct legislative and communication strategy."[32] Canning explained at deposition that this was a problem because strategy "is led by the legislative director [Canning] and chief of staff [Ye], not the leg assistant 2 [Hanson]."[33] Canning also wrote in her email that Hanson "was suggesting on some matters . . . a move away from the direction that we had already established under [Ye's] leadership as chief of staff."[34] Canning further detailed concerns about Hanson's fit, manageability, and work product.[35] Canning testified at deposition that her first impression of Hanson "was that she did not take direction from her supervisor and publicly second-guessed the strategy he spent years developing."[36]

Also on January 25, 2023 (the same day that Ye and Canning emailed Rep. Pham with their descriptions of Hanson's job performance), Rep. Pham terminated Hanson's employment.[37]

---

[29] *Id*. at 15.

[30] *Id.*

[31] ECF 71-3 at 7-9.

[32] *Id.* at 7.

[33] Canning Dep. (ECF 71-3) 20:6-22.

[34] ECF 71-3 at 7.

[35] *Id.* at 7-9.

[36] Canning Dep. (ECF 71-3) 22:12-17.

[37] Pham. Dep (ECF 79-2) 37:15-22.

PAGE 7 – OPINION AND ORDER

After speaking with Hanson, Rep. Pham emailed Hanson a copy of a letter that explained the reasons for ending Hanson's employment as follows:

> I have decided to end your employment because differences in political and communications strategy are leading to tension, duplicative work, and lost time. I need [a Legislative Assistant] 2 who will accept direction under my Chief of Staff and Legislative Director, rather than question and critique the strategy and bypass their directions. I don't think we can resolve these problems in the short time that we have.[38]

On April 4, 2023, Hanson filed her SAC, which incorporated new claims and allegations pertaining to her employment with Rep. Pham and her termination from that employment.

## DISCUSSION

### A. Eleventh Amendment Immunity

The Legislature argues that Eleventh Amendment sovereign immunity should apply to the "new claims"—*i.e.*, Counts One and Two of the First Claim to the extent they arise from new facts not alleged in the original Complaint. The Legislature acknowledges that its removal of this action from state court waived sovereign immunity for all claims in existence at the time of removal but argues that its earlier waiver should not apply to the new claims. According to the Legislature, Hanson's new claims were not removed from state court and are therefore "more analogous to claims filed by a plaintiff initially in this forum" (to which Eleventh Amendment immunity would apply). The voluntary removal of the original lawsuit from state court to federal court, however, is not the basis for this Court's conclusion that the Legislature has waived its sovereign immunity with respect to the new claims. The Legislature stipulated to the filing of the

---

[38] ECF 79-2 at 16. Hanson asserts that she was not required to "accept direction" from Legislative Director Canning (who was a higher-ranked employee but not Hanson's direct supervisor) beyond deferring to Canning on assignments that Rep. Pham gave to Canning. Rep. Pham clarified in her deposition that the issue about "accept[ing] direction" with respect to Canning was "more about a project assignment than an overall chain of command." Pham Dep. (ECF 79-2) 38:19-39:11.

SAC, which incorporated the new claims. *See* Stipulated Mot. (ECF 62). The Court finds that the Legislature cannot stipulate to the addition of claims in a federal lawsuit and then challenge those same claims on grounds of sovereign immunity. By its stipulation, the Legislature has waived its sovereign immunity.

**B.  Exhaustion Requirement Under ORS § 659A.139**

The Legislature also moves for summary judgment against Counts One and Two of Hanson's First Claim (insofar as those claims arise out of the Pham Phase) on the ground that Hanson failed to exhaust her administrative remedies. The Legislature argues that because Oregon's antidiscrimination laws must be construed in a manner that is consistent with the federal Americans with Disabilities Act (ADA) and because the ADA imposes an administrative exhaustion requirement, the same requirement must apply to Hanson's state law claims. In support, the Legislature cites ORS § 659A.139, which provides that specified provisions of Oregon's antidiscrimination law "shall be construed to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act." Relying on ORS § 659A.139, the Legislature asserts that because Hanson did not exhaust her administrative remedies, her claims arising from the Pham Phase are barred.

The Legislature, however, cites no case, statute, or rule that directly supports the proposition that a plaintiff alleging a claim under ORS § 659A.112 must exhaust administrative remedies before filing a civil action, nor does ORS § 659A.139 dictate that result. ORS § 659A.139 provides, in relevant part, only that the provisions of Oregon's antidiscrimination law codified at ORS §§ 659A.103 to 659A.144 "shall be construed to the extent possible in a manner that is consistent with any *similar provisions* of the federal Americans with Disabilities Act" (emphasis added). Whereas 42 U.S.C. § 12117(a) of the ADA imposes a charge-filing

requirement,[39] the Legislature has not identified a "similar provision[]" in Oregon's antidiscrimination law that falls within the scope of ORS § 659A.139. Further, the Legislature's argument contravenes the plain terms of ORS § 659A.870(2), which expressly provides that the filing of a complaint with the Bureau of Labor and Industries (BOLI) "is not a condition precedent to the filing of any civil action."[40] Accordingly, the Court declines to grant summary judgment in favor of the Legislature on the asserted ground that Hanson has failed to exhaust administrative remedies.

**C.  Adverse Employment Actions Under ORS § 659A.112**

ORS § 659A.112(1) makes it unlawful "for any employer to . . . discharge from employment or to discriminate in compensation or in terms, conditions[,] or privileges of employment on the basis of disability." Under ORS § 659A.112(2)(e), an employer is prohibited from failing to make a reasonable accommodation for the known disability of a qualified individual. In Count One of her First Claim, Hanson alleges that she was terminated from her employment with Rep. Pham because of her disability. In Count Three, Hanson alleges that the Legislature failed to provide reasonable accommodations.

---

[39] Title I of the ADA incorporates "[t]he powers, remedies, *and procedures* set forth in [Title VII of the Civil Rights Act of 1964]," 42 U.S.C. § 12117(a) (emphasis added); Title VII, in turn, directs that a complainant may commence a civil action against an allegedly offending employer only after filing a charge with the Equal Employment Opportunity Commission (or, under certain circumstances, a state or local employment agency), *see* 42 U.S.C. § 2000e-5(c); *see also Tomlinson v. City of Portland*, 2024 WL 279036, at *5, 5 n.8 (D. Or. Jan. 25, 2024) (reviewing the ADA's exhaustion requirements).

[40] In addition, ORS § 659A.820(4)(a) expressly contemplates that a civil action may be filed in the alternative to a BOLI complaint. *See* ORS § 659A.820(4)(a) (providing that with a narrow exception not applicable here, "a [BOLI] complaint may not be filed under this section if a civil action has been commenced in state or federal court alleging the same matters").

### 1. Wrongful Termination

#### a. Legal Framework

To establish a *prima facie* case of disability discrimination under ORS § 659A.112(1), the plaintiff must show: "(1) she is a qualified individual with a disability, (2) she suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and her disability." *Huitt v. Optum Health Servs.*, 216 F. Supp. 3d 1179, 1187 (D. Or. 2016). To show causation, a plaintiff must prove "that the adverse employment action would not have occurred *but for* the disability." *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019) (emphasis added) (construing ADA).

When evaluating a typical wrongful termination claim at summary judgment, a court must apply the *McDonnell Douglas* burden-shifting framework. *See Snead v. Metro. Prop. & Cas. Ins.*, 237 F.3d 1080, 1093-94 (9th Cir. 2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) and applying framework); *see also Dawson v. Entek Intl.*, 630 F.3d 928, 935-37 (9th Cir. 2011) (explaining that the *McDonnell Douglas* burden-shifting scheme is federal procedural law that applies regardless of the source of the federal court's subject-matter jurisdiction over a state-law claim). Under that framework, the plaintiff-employee "has the initial burden of establishing a prima facie case of discrimination." *Curley v. City of North Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014). The burden then shifts to the defendant-employer "to provide a legitimate, nondiscriminatory . . . reason for the adverse employment action." *Id.* If the employer does so, the burden then "shifts back to the employee to prove that the reason given by the employer was pretextual." *Id.*

That burden-shifting framework, however, does not apply "where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). Such "direct evidence" includes evidence that the plaintiff was terminated from

PAGE 11 – OPINION AND ORDER

employment for a performance issue that resulted from the employer's failure to reasonably accommodate the employee's disability. *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139-40 (9th Cir. 2001) (noting that an employee's conduct resulting from a disability is generally "considered to be part of the disability, rather than a separate basis for termination"); *id.* at 1140 ("The link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability.");[41] *see also Pietro v. Walt Disney Co.*, 2012 WL 4755415, at *5-6 (C.D. Cal. Oct. 4, 2012) (concluding that a plaintiff's termination from employment resulting from his failure to adhere to an employer's attendance policy was *not* direct evidence of discrimination because the plaintiff had not shown that his failure to adhere to the policy was caused by his disability). Because Hanson has presented such evidence, the Court examines whether that evidence is sufficient to satisfy her *prima facie* burden.

### b. Application

The Legislature does not dispute that Hanson is a qualified individual with a disability or that termination of employment is an adverse employment action. Instead, the Legislature argues that Hanson has failed to demonstrate a causal connection between the termination of her employment and her disability. Hanson responds that she has presented both direct and circumstantial evidence from which a reasonable jury could find that Hanson's employment was

---

[41] The plaintiff in *Humphrey* alleged that her employer had terminated her employment for attendance problems that were caused by her disability, and the district court granted summary judgment in favor of the defendant. Reversing the district court on that claim, the Ninth Circuit considered whether the plaintiff had presented sufficient evidence to survive summary judgment by examining the disputed elements of her *prima facie* case (whether she was a qualified individual with a disability and whether she had demonstrated causation) and did not apply the *McDonnell Douglas* framework. *See Humphrey*, 239 F.3d at 1133, 1134-37, 1139-40.

terminated because of her disability. Among other things, Hanson argues that there are genuine issues of material fact as to (1) whether the Legislature failed to accommodate her disabilities and (2) whether that failure resulted in her termination from employment.[42] For the reasons stated below, the Court agrees with Hanson.

Hanson has presented evidence showing not only that she asked that her assignments be given to her in writing, but also that she asked for "written instruction" about her role and responsibilities, to whom she reported, her employer's expectations of her, and who was in charge of her time. For purposes of the pending Motion, the Legislature does not dispute that the "written instruction" was never provided. The Legislature also does not dispute in its Motion that the accommodations that Hanson requested were reasonable (and necessary). Construing the evidence in the light most favorable to Hanson, a reasonable jury could find that the issues with Hanson's job performance that led to the termination of her employment—specifically, the issues identified in Rep. Pham's January 25th letter—substantially resulted from a failure to provide Hanson with written instructions regarding her responsibilities and role.[43]

In its Motion, the Legislature contends that there was no failure to accommodate because Hanson's failure to submit the reasonable accommodation paperwork interfered with the Legislature's formal reasonable accommodation process. *See* ECF 70 at 18 (arguing that Hanson

---

[42] Hanson raises additional arguments in support of her claim that the termination of her employment was caused by her disability. Because the Court finds that Hanson has raised a sufficient factual dispute as to whether her termination from employment was caused by a failure to accommodate, the Court does not consider those additional arguments.

[43] Construing the evidence in the light most favorable to Hanson, a reasonable jury could also find that several of the issues raised in the emails sent by Ye and Canning to Rep. Pham similarly resulted from a failure to provide Hanson with those instructions. For example, Ye stated that Hanson gave "the strong impression that [she] do[es] not understand the specific job" for which she was hired and that she had "difficulty accepting parameters of her decision-making ability for this office."

"at most" made her reasonable accommodation requests "informally" and that her failure to turn in the paperwork was "problematic, as neither side can delay or obstruct the process" (citing *Humphrey*, 239 F.3d at 1137)). Put differently, the Legislature argues that Hanson has failed to demonstrate causation because it was not Hanson's *disability* that led to a failure to accommodate, but rather Hanson's failure properly to seek accommodations. Hanson responds that her communications with Rep. Pham and Ye were sufficient to put her employer on notice of her need for accommodations and that she therefore satisfied her obligation to engage in the interactive process—notwithstanding her failure to turn in the accommodation request paperwork.

Construing the facts in the light most favorable to Hanson, the Court agrees with Hanson. Hanson has presented ample evidence that she informed Ye and Rep. Pham of her need for accommodations, in addition to informing human resources personnel. The Legislature has pointed to no authority standing for the proposition that an employee must provide formal notice or complete a specified form to satisfy her notice requirement and thereby trigger the employer's obligation to engage in the interactive process (even if that employee has been made aware of the employer's formal process), or that an employee's awareness of a formal process renders "informal" requests for accommodations insufficient. *See Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018) (setting forth the need to engage in an interactive process and the respective burdens placed on each party).[44] Indeed, the Ninth Circuit has explained that an

---

[44] In its Reply, the Legislature also asserts that Hanson's failure to complete the paperwork is "unexplained" and suggests that Hanson's requested accommodations therefore must not have been as important as Hanson now contends. That argument, however, was not raised in the Legislature's Motion, and the Court need not consider it. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *cf. Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) (noting that under the Federal Rules of Appellate Procedure, "arguments raised for the first time in a reply brief are waived"). In any event, Hanson *did* explain why she did not turn in the

employee need only provide notice that is in "plain English" and "need not mention the ADA or use the phrase 'reasonable accommodation.'" *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000), *vacated on other grounds sub nom US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002); *see also Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) ("An employee is not required to use any particular language when requesting an accommodation but need only inform the employer of the need for an adjustment due to a medical condition." (quotation marks omitted)). The key is that the employee must provide "the employer with enough information that, under the circumstances, the employer can fairly be said to know of both the disability and desire for an accommodation." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999). Hanson's supervisors told her they needed some time but would get back to her regarding her requested accommodations and did not indicate any confusion about her disabilities or desire for accommodation. Because Hanson has presented evidence sufficient to raise a factual dispute about whether her termination from employment was caused a wrongful failure to accommodate her disability, the Court declines to grant summary judgment in favor of the Legislature on Hanson's wrongful termination claim.

### 2. Failure to Provide Reasonable Accommodation

An employer may be held liable for disability discrimination under ORS § 659A.112(1) by failing to "make reasonable accommodation to the known physical or mental limitations of a qualified individual with a disability who is a job applicant or employee, unless the employer can demonstrate that the accommodation would impose an undue hardship" on the employer. ORS § 659A.112(2)(e). To establish a *prima facie* case for failure to accommodate, a plaintiff must show: (1) she is a qualified individual; (2) the defendant received adequate notice of the

---

paperwork: because Ye and Rep. Pham had asked for "grace" during January and promised Hanson that they would be able to discuss her needed accommodations in February.

PAGE 15 – OPINION AND ORDER

plaintiff's desire for a reasonable accommodation; and (3) a reasonable accommodation was available that would have enabled the plaintiff to perform the essential functions of her job. *See Snapp*, 889 F.3d at 1095, 1099 (listing the elements of a failure to accommodate claim under the ADA).

When an employee claims that a failure to accommodate resulted in an unlawful termination, her claims of unlawful termination and failure to accommodate may be, "from a practical standpoint, the same." *Humprey*, 239 F.3d at 1139. Such is the case here. For the reasons discussed above, Hanson has presented evidence sufficient to raise a factual dispute as to whether the Legislature failed to accommodate her disability. Accordingly, the Court denies summary judgment on Hanson's reasonable accommodation claim.

### D. Hanson's Ninth, Tenth, and Eleventh Claims

In her SAC, Hanson asserts the Ninth, Tenth, and Eleventh Claims based in part on actions alleged to have occurred during the Pham Phase. Hanson, however, has moved the Court "for leave to amend to withdraw" her Tenth and Eleventh Claims. ECF 77 at 17. The Court grants Hanson's request and considers those claims withdrawn. In addition, Hanson concedes that she has not alleged events related to the Pham Phase as required to support her Ninth Claim and clarifies that she does not intend to assert that claim relating to the Pham Phase. *Id.* at 16-17. The Court accepts Hanson's clarification that her Ninth Claim for relief pertains only to events alleged to have occurred before the Pham Phase.

## CONCLUSION

The Court denies Defendant's Second Motion for Partial Summary Judgment (ECF 70). The Court grants Plaintiff's request to withdraw her Tenth and Eleventh Claims and accepts Plaintiff's clarification that her Ninth Claim pertains only to events that occurred before her

employment began with Rep. Pham. The pretrial conference remains set for May 9, 2024, and the seven-day jury trial remains set to begin on June 24, 2024.

**IT IS SO ORDERED**.

DATED this 28th day of March, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge