Rebecca Cambreleng, OSB No. 133209
rebecca@employmentlaw-nw.com
Ashley A. Marton, OSB No. 171584
ashley@employmentlaw-nw.com
**CAMBRELENG & MARTON LLC**
3518 S. Corbett Ave.
Portland, Oregon 97239
Telephone: (503) 477-4899
*Of Attorneys for Plaintiff*

Meredith Holley, OSB No. 125647
Meredith@erisresolution.com
**Law Office of Meredith Holley**
207 E 5th Avenue, Suite 254
Eugene, Oregon 97401
Telephone: (458) 221-2671
*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LAURA HANSON**, <br><br> Plaintiff, <br><br> v. <br><br> **STATE OF OREGON LEGISLATIVE ASSEMBLY**, <br><br> Defendant. | Case No.   3:21-CV-00780-SI <br><br> **PLAINTIFF'S LAY WITNESS LIST** |

Plaintiff Laura Hanson submits her list of lay witnesses. Plaintiff reserves her right to alter, amend, and/or supplement this list.

//

//

Witness Name: Laura Hanson (she/her)

Occupation: Law Student

Address: c/o CAMBRELENG & MARTON LLC, 3518 S. Corbett Ave., Portland, Oregon 97239

Length for Direct: 4 hours

Narrative statement:

Plaintiff Laura Hanson will testify regarding the following:

- She worked for the Defendant Oregon legislature between December 5, 2018, and October 7, 2020, as a Legislative Assistant I, or Chief of Staff for Senator Sara Gelser (now Gelser-Blouin). At the time of her hire, Ms. Hanson had diagnosed disabilities including post-traumatic stress disorder (PTSD), irritable bowel syndrome (IBS), anxiety, and depression. These disabilities substantially limit her major life activities, including learning, concentrating, thinking, communicating, understanding instruction, staying awake, digesting food predictably, and sleeping.
- Ms. Hanson will testify about her background and education. She will briefly discuss that she reported misconduct while in college that was mishandled through the university process, and she experienced institutional harm. She will testify why she wanted to work for Sen. Gelser in particular.
- She will discuss her work hours and work assignments, including discussions with Sen. Gelser about flex time and expectations regarding communication.
- She will testify to conversations with Sen. Gelser about feedback for work performance, and use of the word "toxic" in communications.
- She will discuss trainings she attended given by the legislature and its impact on her perception of reporting to HR.
- She will testify as to her diagnosis and disclosure of attention deficit hyperactivity disorder (ADHD) and Sen. Gelser's response.

- She will testify as to the "mental health day" and illness communications and expectations on December 17-19, 2019.
- She will testify to the work assigned on December 19, and its impact on her request for protected leave on December 20, 2019.
- Ms. Hanson will testify as to her workload and communications between her and Sen. Gelser from December 17 to 30, 2019.
- She will testify to the "emotionally toxic and abusive work environment" text to Sen. Gelser and intent and reasoning behind it.
- She will testify to the discussions with Dir. Knieling on December 31, 2019 through Jan. 2, 2020.
- She will testify to her interactions with Brenda Baumgart, including initial discussion in early January.
- She will testify to the January 5 communications with Sen. Gelser and Dir. Knieling regarding her reports and concerns and the upcoming meeting.
- She will testify to the events leading up to the meeting with Sen. Gelser and Dir. Knieling on January 6, 2020, the parameters of her administrative leave, the circumstances surrounding her last day at work, including all computer and email access and actions taken at the direction of Sen. Gelser and Dir. Knieling.
- She will testify as to the impact of being on administrative leave and its particular parameters had on her mental health and overall wellbeing.
- She will testify to the multiple interviews with Brenda Baumgart, and the impact that had on her emotional and mental wellbeing, and decisions she made regarding responses to repeated questioning on the same issues over 3 interviews, one for more than 6 hours, while suffering from disclosed mental health break, including suicidal ideations.

- She will testify to her concerns and decisions made around the Rule 27 process and public hearings including the circumstances surrounding her decision to speak to the news media and documentation she turned over.
- She will testify to rumors regarding her leave, the impact on her, and her requests to squash the gossip and damage to her reputation and the legislature's response.
- She will testify to the public process of Rule 27 and its impact on her, the perception of her, and her belief on how it impacted her termination and reputation in the community.
- She will testify as to the facts and circumstances surrounding her termination on October 7, 2020.
- She will testify to her economic damages after her termination including a limited-duration job for the Oregon Employment Department and how after that position ended, she struggled to find work.
- She will testify that she timely filed a complaint with BOLI and the EEOC, and timely filed tort claims notice.
- She will discuss her decision to attend law school.
- She will discuss why she went back to work in the legislature and the facts and circumstances surrounding her application and hiring in December 2022 with Representative Khanh Pham.
- She will testify to the immediate disclosure and notice for her disabilities including ADHD, and the response from Rep. Pham's office, including chief of staff Robin Ye.
- She will discuss the formal paperwork she requested and began filling out, the response from Chief of Staff Ye, and "grace January".
- She will discuss the lack of interactive process, and her termination after only 3 weeks in Rep. Pham's office.
- She will discuss economic damages after she was terminated from Rep. Pham's office.

Page 4 -   **PLAINTIFF'S LAY WITNESS LIST**               Cambreleng & Marton LLC
                                                                    3518 S Corbett Ave
                                                                    Portland, Oregon 97239
                                                                    (503) 477-4899

- She will discuss the emotional and mental impact of being terminated a second time by the same organization and her belief about the harm to her reputation in the community to which she had aspired to work for the duration of her career.

Sara Gelser-Blouin (she/her)

(Adverse witness)

Occupation: State Senator

Address: Through counsel for defendant

Approximate time for testimony: 1 hour

Narrative Statement:

- We expect Senator Gelser-Blouin to testify about Laura's employment including why she hired her, what work Laura did for her, Laura's performance, and the circumstances surrounding requests for medical leave in late 2019.
- She will testify to Laura's medical conditions, how she deals with employees who have medical conditions, and the working environment and conditions of staff in her office.
- She will testify to the text message exchange that had her report to Jessica Knieling pursuant to Rule 27, that she was advised by Jessica Knieling and Brenda Baumgart to place Laura on paid administrative leave starting January 6, 2020, and the reasons for terminating Laura from employment.
- She will testify to the effect the prolonged Rule 27 investigatory process had on her decision to terminate Laura, and her frustration with information that was discovered during Laura's leave. She will also testify to the gossip she was hearing about Laura while Laura was on leave, and her inability to hire additional help while Laura was on leave.
- She will testify as to Ms. Hanson's pay while employed.

Jessica Knieling (she/her)

(Adverse Witness)

Occupation: Human Resources Chief

Address: Through counsel for defendant

Approximate time for testimony: 3 hours

Narrative statement:

- Ms. Knieling will testify to her familiarity with Laura through interactions with Senator Gelser in 2019, including discussions around accommodating disabilities and medical leave.

- She will testify that defendant is a covered employer under relevant law with more than 15 employees.

- She will testify about her experience with Rule 27 and her experience with ADA accommodations and OFLA/FMLA leave laws.

- She will testify as to the Senator's self-report, her phone calls with the Senator and Laura, her decision to send to an investigatory for a facial review, and her decision not to move forward with an employee services investigation.

- She will discuss Laura's FMLA/OFLA leave and the process for protected leave.

- She will testify as to the reasons Laura was put on paid administrative leave, and the circumstances surrounding that leave.

- She will testify to the discussions in the workplace about Laura's leave, the public nature of the Rule 27 process, and concerns Laura raised with her around her protected leave, confidentiality for Rule 27, and her admin leave.

- She will also testify to the many times Laura asked to stop the investigation, her ability to continue working with Senator Gelser, and her desire to continue working.

- She will testify as to Brenda Baumgart's participation and role in the Rule 27 process, including advice she received from Ms. Baumgart regarding Laura's leave and the Rule 27 process and the cost of the investigation. She will testify that Ms. Baumgart not only acted as an investigator but also gave legal advice to the branch.
- She will testify to the decision to terminate Laura's employment in 2020, and the hierarchy of employment within the branch for elected officials and their staff.
- She will testify to the few employees who have been put on paid administrative leave and the termination of their employment.
- She will testify to Laura's request for disability accommodation and termination from Representative Pham's office in 2023.
- She will testify about her instructions to Rep. Pham's office regarding records retention.

Jackie Sandmeyer (they/them)

(Adverse Witness)

Occupation: Self-employed

Address: Through counsel for defendant

Approximate time for testimony: 1 hour

- Jackie Sandmeyer will testify that they had just joined the legislature as the equity officer (LEO) and was getting situated into the role when Laura's complaint was brought forth.
- They will testify about the conflict of interest of the investigator in Laura's case, and that they had no role in putting Laura on paid admin leave or termination and their experience with those processes.
- They will testify that Laura requested the investigation stop multiple times, and that they have never put anyone on paid administrative leave.

- They will testify to their experience with the Rule 27 process including duration, delays, safety measures, and independence of investigators while LEO.

Witness: Nathan Monson (he/him)

Occupation: Self-Employed

Length for Direct: 1 hour

Narrative statement:

Nathan Monson will testify to the following:

- Mr. Monson will testify regarding his work as the Legislative Equity Officer (LEO) beginning April 12, 2021 and ending on June 15, 2021.
- He will discuss his interactions with Human Resources Director, Jessica Knieling, including circumstances and statements made during his interview on February 18, 2021, including statements specific to Laura Hanson.
- He will testify as to statements made by Dir. Knieling surrounding the use of administrative leave including its punitive nature to those who come forward to make complaints, his experience with its impact on reporting employees, and its chilling effect and Dir. Knieling's response.
- He will testify to statements made by Dir. Knieling regarding Laura Hanson and calling her "crazy" and her derogatory statements about reporting employees.
- He will testify to his review of business records including billing records for the Rule 27 process in Ms. Hanson's case and its impact on the duration of her investigatory process.
- He will testify as to discussions with the Legislature regarding its failure to follow its own policies in bidding, hiring, overseeing, and payment of law firms and using them to terminate employees who came forward to report violations.

Witness: Representative Kham Pham (she/her)

(Adverse Witness)

Occupation: State Representative

Time for Direct: Approximately 30 minutes

Narrative statement:

We anticipate Representative Khanh Pham will testify to the following:

- The facts and circumstance surrounding her decision to hire Ms. Hanson in December 2022.

- Her knowledge and experience with employees who report disabilities, and her knowledge, response, and instructions to her staff regarding a report of a disability by Ms. Hanson.

- Her discussions and interactions with Dir. Knieling including the facts and circumstances surrounding Ms. Hanson's termination.

- She will testify that after Ms. Hanson's employment ended, her office deactivated Ms. Hanson's Gmail, Slack, and other accounts used for legislative work so they became immediately inaccessible.

- She will testify as to Ms. Hanson's pay while employed.

Witness: Sabrina Ullmann Mathews (she/her)

Occupation: Licensed Clinical Social Worker

Address: Sabrina Ullmann Mathews, LCSW, LLC, 602 NW Skyline Crest Rd, Portland, OR 97229

Length for Direct: 30 minutes

Narrative statement:

Ms. Ullmann Mathews will testify to the following:

- She is a licensed clinical social worker with experience and education to treat anxiety, depression, and PTSD. She treated Ms. Hanson for those issues.

- On December 17, 2019, she told Ms. Hanson that it was urgent she take a day off because of her experiences of depression, anxiety, and panic related to work.

- On January 20, 2020, she certified Ms. Hanson's December leave.

- She treated Ms. Hanson for 42 visits between January 6, 2020, and July 21, 2021. Each visit cost $160, for a total of $6,620 in expenses after Ms. Hanson was restricted from work on January 6, 2020.

Witness: Dmitriy Rakhlin, PMHNP (he/him)

Occupation: Psychiatric Nurse Practitioner

Address: Oregon Health Sciences University, 3181 SW Sam Jackson Park Rd, Portland, OR 97239-3011

Length for Direct: 20 minutes

Narrative Statement:

Mr. Rakhlin will testify to the following:

- He is a psychiatric nurse practitioner with sufficient training and experience to treat, and special focus in, ADHD. He treated Ms. Hanson for ADHD.

- He believes Ms. Hanson's diagnosis of ADHD is accurate and has treated her for it.

Witness: James Hancey, MD (he/him)

Occupation: Physician

Address: Oregon Health Sciences University, 3181 SW Sam Jackson Park Rd, Portland, OR 97239-3011

Length for Direct: 20 minutes

Narrative Statement:

Dr. Hancey will testify to the following:

- He is a physician with sufficient training and experience to diagnose ADHD. He diagnosed Ms. Hanson with ADHD on December 10, 2019.

Witness: Heidi Strauch (she/her)

Occupation: Administrative Law Judge

Address: c/o CAMBRELENG & MARTON LLC, 3518 S. Corbett Ave., Portland, Oregon 97239

Length for Direct: 1 hour

Narrative Statement:

Judge Strauch will testify to the following:

- Judge Strauch is Ms. Hanson's aunt and will give background as to their relationship, and her knowledge and experience with Ms. Hanson and her desires and goals in life.
- She will testify regarding Ms. Hanson's relationship with her grandmother and its impact on Ms. Hanson.
- She will testify to her conversations and observations of Ms. Hanson during December 2019, including her interactions with Sen. Gelser and their impact on Ms. Hanson.
- She will testify to her conversations and observations of Ms. Hanson when she was put on administrative leave, and during the Rule 27 process, including the change she observed in Ms. Hanson's wellbeing and personality.
- She will testify to Ms. Hanson's decision to contact the media during the Rule 27 process, and Ms. Hanson's concerns regarding confidentiality and publicity during the 10-month leave.
- She will testify to the effect of the termination on Ms. Hanson, and her struggle in the aftermath both emotionally and mentally, as well as financially.
- She will testify to Ms. Hanson's decision to return to work at the legislature, her application and hiring with Rep. Pham, and the positive impact that had on Ms. Hanson.

She will testify to the effect on Ms. Hanson when she was terminated by Rep. Pham and her emotional and mental state after that time.

Witness: Erika Nebel (she/her)

Occupation: Parking Operations Division Manager

Address: c/o CAMBRELENG & MARTON LLC, 3518 S. Corbett Ave., Portland, Oregon 97239

Time for Direct: 45 mintutes (Ms. Nebel is only available to testify starting July 1, 2024)

Narrative Statement:

Erika Nebel will testify to the following:

- Ms. Nebel met Ms. Hanson in 2014 when Ms. Hanson was hired for Commissioner Novick's office and she replaced Ms. Nebel, who received a promotion. They became friends working together and worked together for about three years. They talked around a couple of times a week during times relevant to this case.
- She will testify to conversations surrounding Ms. Hanson's administrative leave and termination and their effect on her mental, physical, and emotional wellbeing.
- She will testify to conversations with Ms. Hanson regarding her search for employment after her 2020 termination and her desire to stay working in the career she had built in public service.
- She will testify to the impact the termination and public nature of the Rule 27 process had on Ms. Hanson's reputation in the public service community.
- She will testify as to the impact the short duration of employment in Rep. Pham's office had on Ms. Hanson and her reputation in the public service community.

Witness: Logan Gilles (he/him)

Occupation: Legislative Coordinator, Oregon Department of Environmental Quality

Address: Oregon Department of Environmental Quality, 700 NE Multnomah Street, Portland, Oregon, 97232

Length for Direct: 45 minutes

Narrative Statement:

Logan Gilles will testify to the following:

- The relationship between himself and Ms. Hanson, including how they met, the nature of the relationship, and how that changed over time.
- He will testify that he recommended her application to Sen. Gelser's office, and about his experience with Sen. Gelser and her staff through his own employment at the Legislature.
- He will testify as to the romantic relationship with Ms. Hanson during 2019 and 2020, and what he witnessed when she was put on administrative leave, including her immediate reaction.
- He will testify to the impact the leave had on Ms. Hanson and their relationship.
- He will testify as to the impact the Rule 27 process had on Ms. Hanson, and about her decision to be part of the public process, her decision to talk to the news media, and her concerns around continued employment.
- He will testify to the impact Ms. Hanson's experience had on other legislative staff speaking up, and the discussions around Ms. Hanson's leave and reputation as she remained on leave and when she was terminated.
- He will testify to the day Ms. Hanson was terminated in 2020 and her immediate reaction.
- He will testify that the end of their romantic relationship did not change his opinion as to the retaliatory nature of the administrative leave and termination and the perceptions by others in the legislature about Ms. Hanson because of the actions taken by the legislature.

Witness: Kean Laffitte (he/him)

Occupation: Global People Systems Administrator

Address: c/o CAMBRELENG & MARTON LLC, 3518 S. Corbett Ave., Portland, Oregon 97239

Length for Direct: 30 Minutes

Narrative Statement:

Kean Laffitte will testify to the following:

- He met Laura Hanson in the summer of 2021 and they began dating. They started living together in April or May 2022. He was witness to her hiring, employment, and termination from Rep. Pham's office.

- He will testify about his experience watching Ms. Hanson look for work, and his perception that her reputation was a hinderance to her obtaining employment.

- He will testify as to her decision to re-apply to the legislature, and her hiring at Rep. Pham's office.

- He will testify as to Ms. Hanson's experience at Rep. Pham's office, including her disclosure of disabilities, "grace January", and lack of accommodation discussions.

- He will discuss the shock of being terminated after only 3 weeks, and Ms. Hanson's immediate reaction.

- He will discuss the emotional, mental, physical, and financial toll it took on Ms. Hanson, and the blow to her reputation and career in public service.

//

//

//

Page 14 -   **PLAINTIFF'S LAY WITNESS LIST**

Dated this 11th day of April, 2024.

Respectfully submitted,

 /s Rebecca Cambreleng
Rebecca Cambreleng, OSB No. 133209
Rebecca@employmentlaw-nw.com
CAMBRELENG & MARTON LLC
3518 S. Corbett Avenue
Portland, OR 97239
*Of Attorneys for Plaintiff*

Meredith Holley(she/her), OSB No. 125647
Meredith@ErisResolution.com
Law Office of Meredith Holley
207 E 5th Avenue, Suite 254
Eugene, OR 97401
Phone: (458) 221-2671
Fax: (833) 352-3615
   *Of Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I certify that on April 11, 2024, I served the foregoing **PLAINTIFF'S LAY WITNESS LIST** upon the parties hereto via electronic means through the Court's Case Management/Electronic Case File system and via electronic mail:

>Meredith Holley, OSB No. 125647
>Meredith@erisresolution.com
>Eris Conflict Resolution
>207 E 5th Avenue, Suite 254
>Eugene, Oregon 97401
>*Of Attorneys for Plaintiff*

>Marc Abrams, OSB No. 890149
>Marc.abrams@doj.state.or.us
>Allie Boyd, OSB No. 163478
>Allie.m.boyd@doj.state.or.us
>Oregon Department of Justice
>100 SW Market Street
>Portland, Oregon 97201
>*Attorneys for Defendant*

>CAMBRELENG & MARTON LLC

>By: s/ Maxwell Joyner
>  Max Joyner, Paralegal