ELLEN F. ROSENBLUM
Attorney General
MARC ABRAMS, #890149
Assistant Attorney-in-Charge
ALLIE BOYD, #163478
Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  marc.abrams@doj.state.or.us
         allie.m.boyd@doj.state.or.us

*Attorneys for Defendant State of Oregon Legislative Assembly*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LAURA HANSON, | Case No. 3:21-cv-00780-SI |
| Plaintiff, | **DEFENDANT'S WITNESS LIST** |
| v. | |
| STATE OF OREGON LEGISLATIVE ASSEMBLY, | |
| Defendant. | |

Defendant State of Oregon Legislative Assembly, by and through their counsel of record, Marc Abrams, Assistant Attorney-in-Charge, and Allie Boyd, Senior Assistant Attorney General, submit the following witness list pursuant to the Court's October 19, 2022 Trial Management Order.

Defendant respectfully reserves the right to supplement or otherwise amend this list, including the right to withdraw any witness, upon appropriate application to the Court under the terms of the Trial Management Order.

Page 1 -   **DEFENDANT'S WITNESS LIST**

1.    **Jessica Knieling**, Chief Human Resources Officer
Department of Administrative Services
c/o AAIC Abrams and AAG Boyd
100 SW Market Street
Portland, OR 97201

a.   Estimated Length of Direct: 90 minutes.

b.   Expected Testimony: Knieling is anticipated to provide testimony regarding her role as the Legislature's Human Resources Director, and her role responding to and investigating plaintiff's complaints about Senator Gelser Blouin, and later her interactions with plaintiff regarding accommodation in 2023.

Knieling will explain her role as HR Director in the initiation of the Rule 27 process, including who is a mandatory reporter, what is reported, and what is done with that report. Knieling will testify that she received a self-report from Senator Gelser Blouin about statements made by plaintiff that her office was a "toxic" and "abusive" work environment. Knieling will explain that Senator Gelser Blouin is a mandatory reporter who was required to self-report behavior that could potentially be a violation of Rule 27. Knieling will testify that she took this report to one of the investigators retained by defendant for Rule 27 investigations to initiate an investigation into Senator Gelser Blouin's conduct.

Knieling will also testify about her experience with Senator Gelser Blouin regarding issues that arose with plaintiff's performance prior to her self-report. She will also testify about prior accommodation discussions with Gelser Blouin and plaintiff, specifically plaintiff's request to have a panic button installed near her desk out of concern about another legislator, and how that request was resolved. Knieling will also explain plaintiff's performance issues Gelser Blouin raised with her and their discussions about ways to support plaintiff to address these issues.

Page 2 -   **DEFENDANT'S WITNESS LIST**

Knieling will also testify to her communications with plaintiff following Gelser Blouin's self-report on December 30, 2019. Knieling will explain that she talked with plaintiff at length, and concluded that she would need to report Senator Gelser Blouin for a Rule 27 investigation based upon concern that plaintiff was claiming a hostile work environment. She will testify that plaintiff said she did not want the investigation to go forward. Knieling will also testify that plaintiff did not bring up accommodations or leave when they spoke, and neither were the subject of plaintiff's complaints about Gelser Blouin at that time. She will testify that it was actually Knieling that explained leave laws to plaintiff, and it was Knieling who suggested a potential accommodation for plaintiff when she disclosed having an ADHD diagnosis.

Knieling will also testify to her decision to place plaintiff on administrative leave starting January 6, 2020 for the duration of the investigation. She will explain this decision was based on the fact that a position like Chief of Staff cannot be meaningfully separated from their legislator, and she determined there was a need to remove plaintiff from an environment that plaintiff perceived as "toxic" and "abusive."

Knieling will also testify about the process of Ms. Baumgart conducting the Rule 27 investigation. She will explain how defendant contracts with the investigators for Rule 27 investigation, how that is funded, and the scope of what the investigators are hired to do. She will testify that despite these investigators being attorneys, they are not counsel for defendant, do not render legal advice to defendant, and do not reach legal conclusions in their Rule 27 investigations.

Knieling will also testify to plaintiff's later employment with Representative Pham in January 2023, and her communications with plaintiff about a request for accommodation. Knieling will describe the accommodation interactive process, and her instructions to plaintiff to

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

complete paperwork as an initial step of that process, but that plaintiff never did complete that paperwork before she was released from employment.

2.  **Sara Gelser Blouin**, Senator
    Oregon State Legislature
    c/o AAIC Abrams and AAG Boyd
    100 SW Market Street
    Portland, OR 97201

    a.  Estimated Length of Direct: 90 minutes.

    b.  Expected Testimony: Senator Gelser Blouin is anticipated to give testimony regarding her experience supervising plaintiff, the events leading to the Rule 27 investigation into plaintiff's complaint against her, and her decision to release plaintiff from employment in her office.

Gelser Blouin will explain the structure of her office and staff under her, including her staff members in 2019 that included plaintiff.  Gelser Blouin will explain her expectations and needs for staff in her office, and that historically she has had positive, longstanding relationships with her staff that included working with them to accommodate their needs for disabilities, and needs for protected leave.  Gelser Blouin will also testify as to her own advocacy for disability rights throughout her career.

Gelser Blouin will testify that plaintiff had significant, repeated performance issues as her Chief of Staff that negatively impacted the functioning of her office to the extent it impacted Gelser Blouin's ability to do her job and serve her constituents.  Gelser Blouin will testify about the expectations she set for plaintiff's work performance that she repeatedly failed to meet, including but not limited to arriving significantly late to work on a regular basis, failing to timely respond to constituents, and failing to properly calendar events to the extent that Gelser Blouin missed important meetings and events.  She will explain the ways that she attempted to work

Page 4 -   **DEFENDANT'S WITNESS LIST**

with plaintiff on these performance issues, such as putting expectations in writing and creating examples for plaintiff to reference, but that the issues persisted.

Gelser Blouin will testify about the instances when plaintiff made requests for leave, the first being a request for leave related to a concussion in October 2019, and that Gelser Blouin encouraged plaintiff to take all of the time necessary to recover from her concussion. Gelser Blouin will also testify to a "mental health day" request that plaintiff made in December 2019 that Gelser Blouin approved, and plaintiff took.

Gelser Blouin will also testify that plaintiff disclosed her ADHD diagnosis in December 2019, but made no requests for accommodation. She will testify about her efforts to explore potential accommodations for plaintiff with Jessica Knieling after learning of the diagnosis.

Gelser Blouin will explain the circumstances of December 30, 2020 prior to plaintiff's text message to her that her work environment was "toxic" and "abusive." She will explain that plaintiff had initially made appointments for this date even though Gelser Blouin was set to be out of office, and that plaintiff confirmed she would move those appointments when Gelser Blouin brought this to her attention. Gelser Blouin will explain that plaintiff did not do as she promised, and that plaintiff was unreachable that day, despite it being a working day for her. Gelser Blouin will testify to her communications with plaintiff about the major concerns with her work performance, which included not only this issue but also failing to follow direction and mis-calendar a town hall meeting with Gelser Blouin's constituents, which led Gelser Blouin to advertise the incorrect date for the event.

Gelser Blouin will also testify about additional issues she discovered with plaintiff in the time after plaintiff went on leave. She will explain that she discovered plaintiff's misuse of Gelser Blouin's official email account, such as forwarding emails to plaintiff's private account

Page 5 -    **DEFENDANT'S WITNESS LIST**

and deleting evidence of the forwarding to hide her violation of the rules, and using the same official email account for inappropriate purposes, like making consumer complaints, which had the indicia of coming from her office. Gelser Blouin will also explain that she learned during the investigation that plaintiff turned *all* of her text messages with plaintiff, regardless of subject, over to a reporter. She will explain how this was a major breach of trust because plaintiff disclosed highly sensitive information like information shared by constituents about their own experiences with rape and sexual assault, and personal medical information about Gelser Blouin's children. She will testify that the misuse of communications, significant breach of trust, and performance issues led to her believing she could not continue to employ plaintiff in her office in a role like Chief of Staff.

Gelser Blouin will also explain her role in the Rule 27 process, including that she is a mandatory reporter and was obligated to report herself to Jessica Knieling when plaintiff told her their workplace was a "toxic and abusive" environment. She will explain that she self-reported and believed the Rule 27 investigation to be concerned with whether she had created a hostile workplace. She will explain her efforts to comply with the investigation throughout the process.

3. **Jackie Sandmeyer**, former Legislative Equity Officer
   TIX Education Specialists, Principal
   Address needs to be determined

   a. Estimated Length of Direct: 40 minutes.

   b. Expected Testimony: Sandmeyer is anticipated to testify regarding their role as interim Legislative Equity Officer for the Legislature and their work to create the Legislative Equity Office. Sandmeyer will explain that they were hired by defendant and assumed their position in December 2019 to build a Legislative Equity Office, and their prior experience establishing processes and procedures for reporting and investigating for institutions. Sandmeyer will describe their work on Rule 27 in that capacity, as well as their role advising on Rule 27

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

amendments in their position prior to being hired by defendant.  Sandmeyer will explain the

purpose and parameters of Rule 27 to establish reporting processes, procedures, and protocols for

investigation and resolution of certain reports of harassment, discrimination, and retaliation in

the Legislature.

Sandmeyer will also testify that Rule 27 requires mandatory self-reporting of supervisors,

which includes legislators.  Sandmeyer will testify regarding their involvement in the Rule 27

investigation of Senator Gelser Blouin, and communication with plaintiff during the

investigation.  Sandmeyer will testify that they provided information and answered plaintiff's

questions about the Rule 27 investigation process, and informed plaintiff that the report did need

to be investigated, but that plaintiff had the right to decide not to participate in the investigation.

    4.    **Floyd Prozanski**, Senator, Co-Chair of Oregon Senate Conduct Committee
          Oregon State Legislature
          c/o AAIC Abrams and AAG Boyd
          100 SW Market Street
          Portland, OR 97201

          a.   Estimated Length of Direct: 40 minutes.

          b.   Expected testimony: Senator Prozanski is anticipated to testify regarding his role

as co-chair of the Senate Conduct Committee ("Committee"), and the Committee's procedures

and processes in handling Rule 27 investigations.  Prozanski will also testify regarding the

specific Rule 27 investigation of Senator Gelser Blouin, and the Committee's conclusion that

there was no violation of Rule 27.

Prozanski will explain the origins of Rule 27 and its goals, its construction, the types of

reports that fall under Rule 27, and the potential outcomes of a Rule 27 investigation.  He will

explain that Rule 27 creates mandatory reporters, and who those are.  He will also testify

regarding the investigators who are hired by defendant to conduct these investigations, and what

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

their roles are in the process.  Prozanski will describe the process by which the investigator and Committee make factual findings, and then the Committee utilizes those findings to make the determination as to whether Rule 27 has been violated.

Prozanski will testify about the specific Rule 27 investigation into Senator Gelser Blouin's conduct, including how the report came in, and what the next steps were after Gelser Blouin made the self-report.  He will explain that plaintiff had the right to give information to the Committee, but was not obligated to speak with the Committee, or the investigator in this investigation.  He will also explain why plaintiff did not have the ability to stop the investigation if she wanted to or delay it as she requested because Senator Gelser Blouin is the subject of the investigation, and there are necessary timelines in the process.

Prozanski will also testify about the specific presentations made by plaintiff and the investigator, Brenda Baumgart, to the Committee on July 15, 2020.  He will explain that the Committee did not reach a conclusion as to the Rule 27 investigation on that date, but reconvened on October 7, 2020, at which time the Committee determined that there was no violation of Rule 27 by Senator Gelser Blouin.  He will explain that here were no findings or investigation into plaintiff's conduct, and there was no consideration by the Committee as to whether to terminate plaintiff's employment.

5. **Brenda Baumgart**, Partner
   Stoel Rives LLP
   760 SW Ninth Avenue, Suite 3000
   Portland, OR 97205

   a. Estimated Length of Direct: 60 minutes.

   b. Expected testimony: Baumgart is anticipated to testify about her role as an investigator hired by defendant to investigate Rule 27 reports.  Baumgart will testify to her qualifications as an investigator, and her standards for conducting an investigation.

Page 8 -   **DEFENDANT'S WITNESS LIST**

Baumgart will testify to her experience investigating the self-report by Senator Gelser Blouin of concerns of a "toxic" or "abusive" environment. She will also explain that the investigation turned to another concern with respect to retaliation for taking leave. She will testify that she was never asked and never did investigate any allegations against plaintiff.

Baumgart will explain her investigation process in this case, receiving the report from Jessica Knieling, conducting a facial review of the concerns to see if the report falls within Rule 27. She will then explain that plaintiff was duty stationed at home, and why she supported this, not as a punishment but as a protection to separate individuals in a conflict. She will testify about plaintiff's desire not to participate, and her understanding that plaintiff had every right to choose not to participate in her investigation, but that plaintiff did. She will testify to her interviews of plaintiff and Senator Gelser Blouin, her review of materials and other steps in her investigation, and the conclusions of her investigation that there was no violation of Rule 27 by Senator Gelser Blouin. She will testify that plaintiff told her that plaintiff's sending an appreciative card to Senator Gelser Blouin was just "sucking up."

6.  **Lina de Morais**, Legislative Staff for Senator Gelser Blouin
    c/o AAIC Abrams and AAG Boyd
    100 SW Market Street
    Portland, OR 97201

    a.  Estimated Length of Direct: 30 minutes.

    b.  Expected Testimony: De Morais is anticipated to testify about her experiences working as a staff member for Gelser Blouin, including training, and development of policies for handling disability accommodations. De Morais will testify that she also has disabilities for which she discussed and obtained accommodation with Senator Gelser Blouin. De Morais will also testify that she observed performance issues with plaintiff while plaintiff was working in Senator Gelser Blouin's office. De Morais will also testify to plaintiff's disclosures to her during

Page 9 -  **DEFENDANT'S WITNESS LIST**

the Rule 27 investigation, including that she was pushing a reporter to write a news story to

destroy Senator Gelser Blouin's career.

7.    **Kris Skaro**, former Chief of Staff for Senator Gelser Blouin
       440 Myers Street S
       Salem, OR 97302

       a.    Estimated Length of Direct: 30 minutes.

       b.    Expected Testimony: Skaro is anticipated to testify regarding her time working as

Chief of Staff to Senator Gelser Blouin.  Skaro will testify to Senator Gelser Blouin's

management style and expectations for staff.  Skaro will also testify that she utilized extended

protected and unprotected leave with Senator Gelser Blouin without issue.

8.    **Bobby Schueller**, former Chief of Staff for Senator Gelser Blouin
       3216 Park Terrace SW
       Albany, OR 97321

       a.    Estimated Length of Direct: less than 30 minutes.

       b.    Expected Testimony: Schueller is anticipated to testify regarding his time working

as Chief of Staff to Senator Gelser Blouin.  Schueller will testify to Senator Gelser Blouin's

management style and expectations for staff.  Schueller will also testify that he utilized paternity

leave while working for Senator Gelser Blouin without issue.

9.    **Nikki Fisher**, former Chief of Staff for Senator Gelser Blouin
       28730 SW Villebois Dr N
       Wilsonville, OR 97070

       a.    Estimated Length of Direct: less than 30 minutes.

       b.    Expected Testimony: Fisher is anticipated to testify regarding her time working as

Chief of Staff to Senator Gelser Blouin.  Fisher will testify to Senator Gelser Blouin's

management style and expectations for staff.

Page 10 -  **DEFENDANT'S WITNESS LIST**

10.  **Angela Donley**, former Chief of Staff for Senator Gelser Blouin
5066 SE Casa Del Rey Dr.
Milwaukie, OR 97222

a.  Estimated Length of Direct: less than 30 minutes.

b.  Expected Testimony: Donley is anticipated to testify regarding her time working

as Chief of Staff to Senator Gelser Blouin.  Donley will testify to Senator Gelser Blouin's

management style and expectations for staff.

11.  **Khanh Pham**, Representative
Oregon State Legislature
c/o AAIC Abrams and AAG Boyd
100 SW Market Street
Portland, OR 97201

a.  Estimated Length of Direct: 40 minutes.

b.  Expected Testimony: Representative Pham will testify regarding the

circumstances of hiring plaintiff as a staff member in 2023, and her decision to release plaintiff

from employment.  Pham will testify that plaintiff was hired to work under and report to her

Chief of Staff Robin Ye, but plaintiff immediately displayed issues doing so.  She will explain

the first issue arose with plaintiff's salary being less as a Legislative Assistant 2 than plaintiff felt

she should have for her experience, and that Pham had to cover the balance from her political

action committee fund.

Pham will detail the issues that led to the decision to terminate plaintiff, including that

plaintiff had disagreements with strategies that had already been decided by Pham's team, that

plaintiff caused personal friction within the team, and that she was overall not a good fit.  Pham

will explain that plaintiff would do things like work on tasks that she was told not to, would tell

other staff what to post and not post to social media, and bypassing the directions of the other

staff.  Pham will explain that she sought input from her other staff, Robin Ye and Doyle

Page 11 -  **DEFENDANT'S WITNESS LIST**

Canning, as to plaintiff's performance on the team, and both provided detailed written

memoranda to Pham explaining their issues with plaintiff.  Pham will testify that none of the

issues identified by Pham, or those articulated to her by her staff, were related to disability,

accommodations, or retaliation against plaintiff.  She will testify that these issues she and her

staff identified led to her decision to terminate plaintiff's employment.

Pham will also testify that plaintiff disclosed her ADHD diagnosis to Pham on her first

day of work, but did not request any accommodations other than informing her that clear

deadlines were very helpful for her.  Pham will explain that she went to human resources about

accommodation as well and was told to have plaintiff fill out a form, which plaintiff failed to do.

12. **Robin Ye**, former Chief of Staff for Representative Pham
c/o AAIC Abrams and AAG Boyd
100 SW Market Street
Portland, OR 97201

a. Estimated Length of Direct: 40 minutes.

Expected Testimony: Ye is anticipated to testify regarding his experience working with

plaintiff in Representative Pham's office.  Ye will testify that in just the three weeks that she was

in the office, plaintiff displayed numerous significant performance issues, including that she

could not demonstrate proficiency with completing tasks in a timely fashion or creating usable

results, and had issues with arriving late to work, and was poor at communicating that she would

be late.  Ye will also testify that plaintiff did not respect the chain of command in the office, and

would go over his head to Representative Pham if disagreeing with a decision or direction.  Ye

will also explain that plaintiff had difficulty accepting the parameters of her decision-making in

the office.  Ye will also testify to plaintiff's issues with lateness and poor communication in

those instances.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Ye will also testify to plaintiff's involvement with HB 2619, which was a house bill with a provision written by an attorney in the office of Legislative Counsel that the Oregon Transportation Commission should include at least one member who lives with disability, be closely related to someone with a disability, or be in a disability advocacy group.  Ye will explain that this house bill did not ever require an applicant to disclose the nature of their disability, and the actual mechanism for application or selection of a commission member had not even been drafted at the time.  Ye will testify that plaintiff never spoke out against this bill, and merely raised the issue of whether the bill would differentiate between a physical disability and other types of disability, such as neurodivergent disabilities.  Ye will testify that plaintiff was not terminated for opposing the bill requiring applicants to disclose their disabilities because this was not a requirement in the bill, and it was not a complaint plaintiff raised.

Ye will testify that he prepared an email memorandum to Representative Pham explaining his concerns about plaintiff, including that her work was unusable, her tasks were not timely performed, deadlines were blown, and she did not perform tasks efficiently.  He will explain that it was Pham's decision to terminate plaintiff's employment based on observations of these issues by Pham, Ye, and Canning.

13. **Doyle Canning**, Legislative Director
c/o AAIC Abrams and AAG Boyd
100 SW Market Street
Portland, OR 97201

a.  Estimated Length of Direct: 30 minutes

b.  Expected Testimony: Canning is anticipated to testify regarding her experience working with plaintiff in Rep.  Pham's office. Canning will testify to difficulties working with plaintiff, including her failure to take direction from her supervisor and publicly second-guessing the established strategy that had been developed for legislative and communication strategy.

Page 13 -  **DEFENDANT'S WITNESS LIST**

Canning will testify that she submitted an email memorandum to Representative Pham detailing

her issues with plaintiff's performance on the team.

14.    **Laura Hanson**, Plaintiff
c/o Meredith Holley, Rebecca Cambreleng, Ashley Marton
3518 S. Corbett Ave.
Portland, OR 97239

a.  Estimated Length of Direct: TBD

b.  Expected Testimony: To the extent matters not covered in cross-examination

remain, defendant may call Laura Hanson adversely to further discuss any matter identified in

her direct witness statement, or in the statements for Sara Gelser, Jessica Knieling, Jackie

Sandmeyer, Floyd Prozanski, Khanh Pham, Robin Ye, Doyle Canning or Brenda Baumgart,

above.


DATED April 18, 2024.

Respectfully submitted,
ELLEN F. ROSENBLUM
Attorney General

*s/ Marc Abrams*
MARC ABRAMS, #890149
Assistant Attorney-in-Charge
ALLIE BOYD, #163478
Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
marc.abrams@doj.state.or.us
allie.m.boyd@doj.state.or.us
*Attorneys for Defendant*