Rebecca Cambreleng, OSB No. 133209
rebecca@employmentlaw-nw.com
Ashley A. Marton, OSB No. 171584
ashley@employmentlaw-nw.com
**CAMBRELENG & MARTON LLC**
3518 S. Corbett Ave.
Portland, Oregon 97239
Telephone: (503) 477-4899
*Of Attorneys for Plaintiff*

Meredith Holley(she/her), OSB No. 125647
Meredith@ErisResolution.com
Law Office of Meredith Holley
207 E 5th Avenue, Suite 254
Eugene, OR 97401
Phone: (458) 221-2671
Fax: (833) 352-3615
*Of Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LAURA HANSON**, <br><br> Plaintiff, <br><br> v. <br><br> **STATE OF OREGON LEGISLATIVE ASSEMBLY**, <br><br> Defendant. | Case No.   3:21-CV-00780-SI <br><br> **PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO PLAINTIFF'S LAY WITNESS LIST** |

1. **Laura Hanson (she/her)**

- "Ms. Hanson will testify about her background and education. She will briefly discuss

    that she reported misconduct while in college that was mishandled through the university

Page 1 -**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
   **OBJECTIONS TO PLAINTIFF'S LAY WITNESS LIST**

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

process, and she experienced institutional harm. She will testify why she wanted to work for Sen. Gelser in particular."

- o Defendant appears to object on Fed. R. Evid. 403 grounds for prejudice. However, this testimony also places Sen. Gelser in a positive light as being someone who stands up for victims. This testimony is being offered only to show the impact certain actions had on Ms. Hanson while employed at the legislature and why she may react differently to words and actions than other people without PTSD and her experiences might react. She also isn't discussing sexual assault, just "misconduct".

- "She will testify to rumors regarding her leave, the impact on her, and her requests to squash the gossip and damage to her reputation and the legislature's response."

- o Defendant's objection to this is confusing, and Defendant's exhibit 221 (Plaintiff's 31), is an email chain that contains this information. Further, the deposition testimony of Ms. Baumgart designated by Defendant also contains this information *see* Def. Deposition Designation – Baumgart Dep. 121:12-123:4. Finally, Defendant's argument that it was one unidentified person saying "I know who you are" is incorrect. *See* Laura Hanson Dep. 154:1-15, testimony that it was Amy Vaught of Sen. Fagan's office who said she was on leave for sexually assaulting someone.

- BOLI Complaint and tort claims notice.

- o Because Defendant has admitted timeliness, Plaintiff withdraws this.

2. **Jessica Knieling (she/her)**

- "She will testify that defendant is a covered employer under relevant law with more than 15 employees."

  o Defendant's objection: Ms. Knieling is not an attorney and eliciting legal conclusions from her is improper.

    ▪ Plaintiff's response: Plaintiff will modify to only ask how many employees were working at the legislature during the 2019-2020 time period generally and approximately how many worked full-time. To the extent Defendant has admitted it is a covered employer under relevant laws, this testimony is not necessary.

- "She will testify as to Brenda Baumgart's participation and role in the Rule 27 process, including advice she received from Ms. Baumgart regarding Laura's leave and the Rule 27 process and the cost of the investigation. She will testify that Ms. Baumgart not only acted as an investigator but also gave legal advice to the branch."

  o Defendant argues that this statement is in direct contradiction to deposition testimony and inaccurate, however, in her 30(b)(6) testimony, on behalf of the legislature, Ms. Knieling states that Stoel Rives provided legal advice to the legislature. *See* Knieling 30(b)(6) Dep. 65:1-67:21.

  o Further, at the July 15, 2020, public hearing, Ms. Baumgart stated at minute 16:08: "I am in a current attorney-client relationship with the branch." Oregon Senate Committee on Conduct Meeting, July 15, 2020, at 21:10

- "She will testify to the few employees who have been put on paid administrative leave

and the termination of their employment." Defendant argues this proposed testimony is irrelevant and character or comparator evidence.

o   Again, Defendant's objection to this testimony is at direct odds with their deposition designation. *See* Baumgart Dep. 89:1-90:3 (testifying to others who have been put on paid administrative leave).

o   This testimony isn't for comparator evidence, as the only other people who have been put on paid administrative leave have all been terminated. This is testimony to show a pattern and practice of whistleblower retaliation, which is properly before this jury. *See generally, Ogelsby v. W. Stone & Metal Corp.*, 230 F. Supp. 2d 1184, 1189 (D. Or. 2001).

3.   **Jackie Sandmeyer (they/them)**

●   "They will testify about the conflict of interest of the investigator in Laura's case, and that they had no role in putting Laura on paid admin leave or termination and their experience with those processes."

o   Defendant argues that any "conflict of interest" is both a legal conclusion—and Mx. Sandmeyer is not an attorney—and not relevant to the claims in this action.

▪   Plaintiff's responses: This is very relevant to show that the LEO at the time Ms. Hanson was going through the Rule 27 process believed it a conflict of interest to have Ms. Baumgart make decisions as to paid administrative leave while also investigating her claims.

▪   Evaluation of "conflict of interest" is not necessarily a legal standard and has relevance to the retaliatory and discriminatory nature of Defendant's

process. In this context, Mx. Sandmeyer's statement is an admission of a party opponent as to the unfair nature of Defendant's response to Plaintiff's reports. Mx. Sandmeyer has testified that the Rule 27 process has set investigators up to have a financial incentive to extend investigations and investigate cases that do not require investigation. That type of "conflict of interest" is not a legal conclusion but an observation of the process.

- "They will testify to their experience with the Rule 27 process including duration, delays, safety measures, and independence of investigators while LEO."

    o Defendant argues that only Ms. Hanson's experience is relevant, however Defendant has also listed Mx. Sandmeyer as a lay witness who will testify regarding the Rule 27 process, including their capacity, history with the rule, role, and the procedures. It is unclear what distinction Defendant is making between its designation and Plaintiff's.

        ▪ Plaintiff further responds: Their experience includes what happened with Ms. Hanson's Rule 27 process, and what changes they made based on the concerns of the Rule 27 process in Ms. Hanson's case. All of this is first-hand knowledge and an admission by party opponent as Mx. Sandmeyer was put forth as a 30(b)(6) deponent on behalf of the legislature. See, e.g., Sandmeyer 30(b)(6) Dep. 115:16-26; 118:10-20.

4. **Nathan Monson (he/him)**

    Defendant objects to the testimony of Nathan Monson generally, saying that he is an

Page 5 -**PLAINTIFF'S RESPONSE TO DEFENDANT'S
OBJECTIONS TO PLAINTIFF'S LAY WITNESS LIST**

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

"admitted liar" and that others did not hear Ms. Knieling use the word "crazy." Plaintiff responds to those objections in her Response to Defendant's Motions in Limine filed herewith and below:

- o  Not only has Ms. Knieling admitted to using the term "crazy" regarding Ms. Hanson, any otherwise out of court statement made by Ms. Knieling is an admission by party opponent pursuant to Fed. R. Evid. Rule 801.

- o  The jury is allowed to decide the veracity of Mr. Monson's testimony, that is not for Defendant to decide.

Defendant additionally objects to the following testimony:

- •  "Mr. Monson will testify regarding his work as the Legislative Equity Officer (LEO) beginning April 12, 2021 and ending on June 15, 2021."

  - o  This is relevant background information pursuant to Rule 602 to establish personal knowledge and explains how he had interactions with Ms. Knieling. It is not prejudicial nor irrelevant.

- •  "He will testify to statements made by Dir. Knieling regarding Laura Hanson and calling her "crazy" and her derogatory statements about reporting employees."

  - o  Defendant objects that Mr. Monson has been untruthful in the past, but veracity of a witness is not for the defendant to pre-determine. That is for a jury to decide. Fed. R. Evid. Rule 608. it is "the province of the jury" to determine questions of credibility. *Goldman v. U.S.*, 245 U.S. 474, 477 (1918).

- •  "He will testify to his review of business records including billing records for the Rule 27 process in Ms. Hanson's case and its impact on the duration of her investigatory process."

Page 6 -**PLAINTIFF'S RESPONSE TO DEFENDANT'S
OBJECTIONS TO PLAINTIFF'S LAY WITNESS LIST**

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

- o Defendant objects that Mr. Monson is not an expert, but this is not being offered as expert testimony but as background as to his knowledge of the facts in this matter.

- "He will testify as to discussions with the Legislature regarding its failure to follow its own policies in bidding, hiring, overseeing, and payment of law firms and using them to terminate employees who came forward to report violations."

  - o Defendant's objection: The business practices relating to investigations are irrelevant to this case. *See* defendant's Motion *in limine* No 15.

    - ▪ This is admission by party opponent. Fed. R. Evid. 801.

    - ▪ Additionally, if Defendant is going to call Sen. Prozansky, Ms. Knieling, Mx. Sandmeyer, and Ms. Baumgart to testify as to the Rule 27 process, Plaintiff should be allowed to elicit testimony regarding concerns with that process and how those concerns may have been a factor in her termination.

    - ▪ Defendant has represented that it was limited in the actions that it could take by statute or rule. This testimony tends to support that Defendant used rules as pretext for discrimination and retaliation.

Defendant argues: The next three witnesses are duplicative and cumulatively not likely to lead to the presentation of individually useful evidence. Each is described a provider of treatment for Ms. Hanson's ADHD, PTSD and depression. No more than one of these three witnesses should be allowed.

Page 7 -**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
    **OBJECTIONS TO PLAINTIFF'S LAY WITNESS LIST**

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

**5.** **Sabrina Ullmann Mathews (she/her)**

Defendant objects to Ms. Mathews as cumulative and needlessly duplicative. As Ms. Hanson's primary therapist during her first employment with Defendant and her administrative leave, Ms. Mathews' treatment is relevant to Plaintiff's damages.

Defendant specifically objects to the following elements of the stated testimony:

- "On December 17, 2019, she told Ms. Hanson that it was urgent she take a day off because of her experiences of depression, anxiety, and panic related to work."

  o Pursuant to Fed. R. Evid. 803(4) this statement is an exception to hearsay as a statement made for medical diagnosis or treatment.

- "She treated Ms. Hanson for 42 visits between January 6, 2020, and July 21, 2021. Each visit cost $160, for a total of $6,620 in expenses after Ms. Hanson was restricted from work on January 6, 2020."

  o Defendant objects that Plaintiff has not provided records of these bills, *See* Pl. Trial Ex. 41. Defendant is correct that Ms. Ullmann Mathews only provided dates of service and cost for the majority of her treatments. She has represented that she does not have other records. However, Plaintiff and Ms. Ullmann Mathews may testify as to the cost and dates of these appointments.

**6.** **Dmitriy Rakhlin (he/him)**

  o As stated in the lay witness list, he treated Ms. Hanson for ADHD, which supports her requests for specific accommodations that Ms. Hanson requested with Rep. Pham and, to a lesser extent, her need for accommodations while working with Sen. Gelser.

7. **James Hancey (he/him)**

   o Mr. Hancey is necessary for the actual diagnosis of ADHD for which Mr. Rakhlin provided ongoing treatment. To the extent Defendant would like to stipulate that Ms. Hanson has the diagnosis of ADHD, we do not need to call Dr. Hancey or Dr. Rakhlin.

   Lay Damages Witnesses: Defendant objects that Plaintiff's damages witnesses are duplicative, but cites no law or rule that says Plaintiff has to be limited in the number of damages witnesses. They are not cumulative as each had different conversations and experiences with different parts of the actions that caused emotional harm, which in fact spanned several years.

8. **Heidi Strauch (she/her)**

   Judge Strauch is Ms. Hanson's family member and is able to provide unique context for her experiences with Defendant and how they harmed her.

   • "Judge Strauch is Ms. Hanson's aunt and will give background as to their relationship, and her knowledge and experience with Ms. Hanson and her desires and goals in life."

   o Defendant objects to relevance, but this is relevant background information pursuant to Rule 602 to establish personal knowledge – it is not prejudicial nor irrelevant.

   • "She will testify regarding Ms. Hanson's relationship with her grandmother and its impact on Ms. Hanson."

   o Defendant objects to relevance, but this is being offered pursuant to Fed. R. Evid. Rule 401 as relevant to why Ms. Hanson would go back to the legislature a

Page 9 -**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**OBJECTIONS TO PLAINTIFF'S LAY WITNESS LIST**

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

second time to work for Rep. Pham even after what happened with Sen. Gelser.

- "She will testify to her conversations and observations of Ms. Hanson during December 2019, including her interactions with Sen. Gelser and their impact on Ms. Hanson."

  o Defendant objects that this is hearsay, but the conversations are offered as an exception to hearsay pursuant to Fed. R. Evid. 803 (3). The statements by Ms. Hanson were made immediately after the disclosure to Sen. Gelser about her then-existing mental and emotional condition related to Sen. Gelser's response, or lack thereof. *See e.g. Wagner v. Cnty. of Maricopa*, 747 F.3d 1048, 1053 (9th Cir. 2013)

  o Her observations are not hearsay and are relevant and admissible.

- "She will testify to her conversations and observations of Ms. Hanson when she was put on administrative leave, and during the Rule 27 process, including the change she observed in Ms. Hanson's wellbeing and personality."

  o Defendant objects that this is hearsay, but the conversations are offered as an exception to hearsay pursuant to Fed. R. Evid. 803 (3). The statements by Ms. Hanson were made immediately after the major life events of paid administrative leave, termination, and her second termination about her then-existing mental and emotional conditions. *See e.g. Wagner v. Cnty. of Maricopa*, 747 F.3d 1048, 1053 (9th Cir. 2013)

  o Her observations are not hearsay and are relevant and admissible.

- "She will testify to Ms. Hanson's decision to contact the media during the Rule 27

process, and Ms. Hanson's concerns regarding confidentiality and publicity during the 10-month leave."

- o   Defendant objects that this is hearsay, but the conversations are offered as an exception to hearsay pursuant to Fed. R. Evid. 803 (3). The statements by Ms. Hanson as to why she was taking an action were made immediately after the major life events of paid administrative leave, about her then-existing mental and emotional conditions related to her feeling of helplessness during the Rule 27 process.

- • "She will testify to Ms. Hanson's decision to return to work at the legislature, her application and hiring with Rep. Pham, and the positive impact that had on Ms. Hanson."

  - o   No objection is stated.

- • "She will testify to the effect on Ms. Hanson when she was terminated by Rep. Pham and her emotional and mental state after that time."

  - o   Defendant objects that this is hearsay, but the conversation is offered as an exception to hearsay pursuant to Fed. R. Evid. 803 (3). The statements by Ms. Hanson as to why she was taking an action were made immediately after the major life event of termination, about her then-existing mental and emotional conditions related to her termination.

**9.  <u>Erika Nebel (she/her)</u>**

Ms. Nebel is Ms. Hanson's best friend and has unique observations regarding Ms. Hanson from the other witnesses.

Page 11 -**PLAINTIFF'S RESPONSE TO DEFENDANT'S
OBJECTIONS TO PLAINTIFF'S LAY WITNESS LIST**

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

Defendant objects to the following elements of the stated testimony:

- "Ms. Nebel met Ms. Hanson in 2014 when Ms. Hanson was hired for Commissioner Novick's office and she replaced Ms. Nebel, who received a promotion. They became friends working together and worked together for about three years. They talked around a couple of times a week during times relevant to this case."

  o Defendant objects that this is irrelevant, but there is no testimony being offered about the substance of the conversation, this is being offered pursuant to Rule 602 to establish personal knowledge.

- "She will testify to conversations surrounding Ms. Hanson's administrative leave and termination and their effect on her mental, physical, and emotional wellbeing."

  o Defendant objects that this is hearsay, but the conversations are offered as an exception to hearsay pursuant to Fed. R. Evid. 803(3). The statements by Ms. Hanson were made immediately after the major life events of paid administrative leave, termination, and her second termination about her then-existing mental and emotional conditions. *See e.g. Wagner v. Cnty. of Maricopa*, 747 F.3d 1048, 1053 (9th Cir. 2013).

- "She will testify to conversations with Ms. Hanson regarding her search for employment after her 2020 termination and her desire to stay working in the career she had built in public service."

  o Defendant objects that this is hearsay, but this is being offered pursuant to Fed. R. Evid. Rule 401 as relevant to why Ms. Hanson would go back to the legislature a second time to work for Rep. Pham even after what happened with Sen. Gelser.

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

- o The conversations are offered as an exception to hearsay pursuant to Fed. R. Evid. 803(3). The statements by Ms. Hanson were made immediately after the major life events of paid administrative leave, termination, and her second termination about her then-existing mental and emotional conditions. *See e.g. Wagner v. Cnty. Of Maricopa*, 747 F.3d 1048, 1053 (9th Cir. 2013)

- "She will testify to the impact the termination and public nature of the Rule 27 process had on Ms. Hanson's reputation in the public service community."  Ms. Nebel appears to be a mid-level employee of city government.

  - o Defendant's objection: What community she has knowledge of and her credibility in this regard should not be given credit.  In addition, notwithstanding Fed. R. Evid. 405, it is likely this is no more than hearsay and unattributed hearsay at that.

    - ▪ Plaintiff's responses: This testimony is subject to Fed. R. Evid. Rule 405, despite Defendant's desire to "notwithstand" a rule of evidence.

    - ▪ It is for a jury to decide what weight to give her testimony, Defendant can argue as to the "mid-level city government" nature of the testimony.

    - ▪ Moreover, any statements are not being offered for their truth, but the effect on Ms. Hanson.

    - ▪ To the extent they are offered for truth, they are offered for Ms. Hanson's then-existing mental and emotional conditions. *See e.g. Wagner v. Cnty. of Maricopa*, 747 F.3d 1048, 1053 (9th Cir. 2013).

- "She will testify as to the impact the short duration of employment in Rep. Pham's office had on Ms. Hanson and her reputation in the public service community."

- o Defendant's objection: What community she has knowledge of and her credibility in this regard should not be given credit. In addition, notwithstanding Fed. R. Evid. 405, it is likely this is no more than hearsay and unattributed hearsay at that.
  - ▪ This testimony is subject to Fed. R. Evid. Rule 405, despite Defendant's desire to "notwithstand" a rule of evidence.
  - ▪ It is for a jury to decide what weight to give her testimony, Defendant can argue as to the "mid-level city government" nature of the testimony.
  - ▪ Moreover, any statements are not being offered for their truth, but the effect on Ms. Hanson.
  - ▪ To the extent they are offered for truth, they are offered for Ms. Hanson's then-existing mental and emotional conditions. *See e.g. Wagner v. Cnty. of Maricopa*, 747 F.3d 1048, 1053 (9th Cir. 2013).

## 10. <u>Logan Giles (he/him)</u>

Mr. Gilles was Ms. Hanson's romantic partner during her administrative leave and termination with Sen. Gelser's office. He was present for her reactions and responses to the administrative leave and termination.

Defendant objects to the following elements of the stated testimony:

- "The relationship between himself and Ms. Hanson, including how they met, the nature of the relationship, and how that changed over time."
  - o Defendant objects to relevance. This is being offered pursuant to Rule 602 to establish personal knowledge.
- "He will testify that he recommended her application to Sen. Gelser's office, and

about his experience with Sen. Gelser and her staff through his own employment at the Legislature."

- o Defendant objects to relevance. This is being offered pursuant to Rule 602 to establish personal knowledge.

- "He will testify as to the romantic relationship with Ms. Hanson during 2019 and 2020, and what he witnessed when she was put on administrative leave, including her immediate reaction."

- o Defendant objects to relevance. This is being offered pursuant to Rule 602 to establish personal knowledge and why he was with her during these pivotal moments.

- o This will also show his lack of bias as they are no longer romantically linked pursuant to Fed. R. Evid. Rule 405. *See generally Davis v. Alaska*, 415 U.S. 308, 320, 94 S. Ct. 1105, 1112, 39 L. Ed. 2d 347 (1974).

- "He will testify to the impact the leave had on Ms. Hanson and their relationship."

- o Defendant objects as follows: Being placed on leave is part of the personnel process. It is not defendant's understanding that fully paid administrative leave is an element of the alleged retaliation in this litigation. Accordingly, this would be irrelevant.

  - ▪ This is in direct contradiction to the Opinion and Order on Defendant's Motion for Summary Judgment ECF 61, finding that paid administrative leave is one basis for the retaliation claims under (1) disability discrimination under the ADA and Oregon law, (4) OFLA retaliation, (5)

Page 15 - **PLAINTIFF'S RESPONSE TO DEFENDANT'S
OBJECTIONS TO PLAINTIFF'S LAY WITNESS LIST**

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

Oregon whistleblower retaliation.

- "He will testify as to the impact the Rule 27 process had on Ms. Hanson, and about her decision to be part of the public process, her decision to talk to the news media, and her concerns around continued employment."

  o Defendant objects as follows: Mr. Giles may testify as to his observations of impact, but any testimony at to Ms. Hanson's decisions would be inadmissible hearsay.

    ▪ The conversations are offered as an exception to hearsay pursuant to Fed. R. Evid. 803(3). The statements by Ms. Hanson were made immediately after the major life events of paid administrative leave and the ongoing concerns regarding the imbalance of power in the Rule 27 process related to her then-existing mental and emotional conditions. *See e.g. Wagner v. Cnty. of Maricopa*, 747 F.3d 1048, 1053 (9th Cir. 2013)

- "He will testify to the impact Ms. Hanson's experience had on other legislative staff speaking up, and the discussions around Ms. Hanson's leave and reputation as she remained on leave and when she was terminated."

  o Defendant objects as follows: Whether or not other legislative staff did or did not speak up is irrelevant to the specific allegations regarding Ms. Hanson. This would be unduly prejudicial as well. "Discussions around Ms. Hanson's leave" would be hearsay.

    ▪ The "discussions around Ms. Hanson's leave" are offered as an exception to hearsay pursuant to Fed. R. Evid. 803(3). The statements by Ms.

Hanson were made immediately after the major life events of paid administrative leave related to her then-existing mental and emotional conditions. *See e.g. Wagner v. Cnty. of Maricopa*, 747 F.3d 1048, 1053 (9th Cir. 2013).

▪ The potential chilling effect on other employees is an important part of a whistleblower retaliation case. See, e.g., *Dahlia v. Rodriguez*, 735 F.3d 1060, 1078 (9th Cir. 2013). Therefore, the testimony is relevant. Particularly he may testify to his own response and concerns as a legislative staffer.

- "He will testify that the end of their romantic relationship did not change his opinion as to the retaliatory nature of the administrative leave and termination and the perceptions by others in the legislature about Ms. Hanson because of the actions taken by the legislature."

  o Defendant objects as follows: Mr. Giles' *opinion* as to whether Ms. Hanson being placed on leave was retaliatory is irrelevant. Whether or not his opinion was changed by the end of his romantic relationship is irrelevant.

    ▪ This is being offered pursuant to Fed. R. Evid. Rule 701 as opinion testimony of a lay witness based on his perceptions of the retaliatory nature of the paid administrative leave and termination.

    ▪ The end of the romantic relationship is relevant to show a lack of bias.

## 11. <u>Kean Laffitte (he/him)</u>

Kean Laffitte was Ms. Hanson's romantic partner during her job search in 2022 and her employment and termination with Rep. Pham's office. His testimony is not duplicative of other witnesses.

Defendant objects to the following elements of the stated testimony:

- "He met Laura Hanson in the summer of 2021, and they began dating. They started living together in April or May 2022.  He was witness to her hiring, employment, and termination from Rep. Pham's office."

   o Defendant's objection: This is simply an overstatement.  Mr. Lafitte was *not* a witness to any of the stated events, as he was, at most, a witness to Ms. Hanson's responses to them, those events occurring at the Legislature, and Mr. Lafitte was not present at the Legislature.

      ▪ Plaintiff's response: He is not going to testify he was a witness to the actual events in the office, he is going to testify to Ms. Hanson's reactions, response, and overall mental and emotional responses pursuant to Fed. R. Evid. 803(3).

- "He will testify about his experience watching Ms. Hanson look for work, and his perception that her reputation was a hinderance to her obtaining employment."

   o Defendant's objection: Mr. Lafitte can have no possible first-hand knowledge. He will simply mimic what Ms. Hanson has expressed to him.  Regardless, as Ms. Hanson had, during that period, already applied to law school, this would be knowingly misleading.

      ▪ Plaintiff's responses: Whether it's misleading is not for defendant to

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

decide, that is up to a jury to determine if her return to law school had any impact on her search for work and the relationship between her decision to go to law school and her experiences with Defendant.

- He does have first-hand knowledge of Ms. Hanson's experience and her mental and emotional state.

- "He will testify as to her decision to re-apply to the legislature, and her hiring at Rep. Pham's office."

  o Defendant's objection: Mr. Lafitte will know nothing of these matters except what he has gained through Ms. Hanson telling him and therefore this is hearsay.

    ▪ Plaintiff's responses:This is being offered pursuant to Fed. R. Evid. Rule 401 as relevant to why Ms. Hanson would go back to the legislature a second time to work for Rep. Pham even after what happened with Sen. Gelser.

    ▪ It is not hearsay as it is a present sense impression pursuant to Fed. R. Evid. 803(1).

- "He will testify as to Ms. Hanson's experience at Rep. Pham's office, including her disclosure of disabilities, "grace January", and lack of accommodation discussions."

  o Defendant's objection: Mr. Lafitte will know nothing of these matters except what he has gained through Ms. Hanson telling him and therefore this is hearsay.

    ▪ Plaintiff's response: These statements are offered not for their truth but as to their effect on Ms. Hanson, and her perception as to what was being asked of her.

Submitted this <u>25th</u> Day of April, 2024.

<div style="margin-left: 40%;">

<u>/s Rebecca Cambreleng</u>

Rebecca Cambreleng, OSB No. 133209

Rebecca@employmentlaw-nw.com

CAMBRELENG & MARTON LLC

3518 S. Corbett Avenue

Portland, OR 97239

*Of Attorneys for Plaintiff*

Meredith Holley(she/her), OSB No. 125647

Meredith@ErisResolution.com

Law Office of Meredith Holley

207 E 5th Avenue, Suite 254

Eugene, OR 97401

Phone: (458) 221-2671

Fax: (833) 352-3615

*Of Attorneys for Plaintiff*

</div>

## CERTIFICATE OF SERVICE

I certify that on April 25, 2024, I served the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO PLAINTIFF'S LAY WITNESS LIST** upon the parties hereto via electronic means through the Court's Case Management/Electronic Case File system and via electronic mail:

> Meredith Holley, OSB No. 125647
> Meredith@erisresolution.com
> Eris Conflict Resolution
> 207 E 5th Avenue, Suite 254
> Eugene, Oregon 97401
> *Of Attorneys for Plaintiff*

> Marc Abrams, OSB No. 890149
> Marc.abrams@doj.state.or.us
> Allie Boyd, OSB No. 163478
> Allie.m.boyd@doj.state.or.us
> Oregon Department of Justice
> 100 SW Market Street
> Portland, Oregon 97201
> *Attorneys for Defendant*

CAMBRELENG & MARTON LLC


By: s/ Maxwell Joyner
Max Joyner, Paralegal