Rebecca Cambreleng, OSB No. 133209
rebecca@workplacelawpdx.com
Ashley A. Marton, OSB No. 171584
ashley@workplacelawpdx.com
CAMBRELENG & MARTON LLC
3518 S. Corbett Ave.
Portland, Oregon 97239
Telephone: (503) 477-4899
*Of Attorneys for Plaintiff*

Meredith Holley(she/her), OSB No. 125647
Meredith@ErisResolution.com
Law Office of Meredith Holley
207 E 5th Avenue, Suite 254
Eugene, OR 97401
Phone: (458) 221-2671
Fax: (833) 352-3615
*Of Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **LAURA HANSON**, <br><br> Plaintiff, <br><br> v. <br><br> **STATE OF OREGON, LEGISLATIVE ASSEMBLY**, <br><br> Defendant. | Case No.  3:21-cv-00780-SI <br><br> **THIRD AMENDED COMPLAINT** <br><br> (Disability Discrimination, Medical Leave Interference, Medical Leave Retaliation, Whistleblower Retaliation) <br><br> NOT SUBJECT TO MANDATORY ARBITRATION <br><br> **JURY TRIAL REQUESTED** |

Plaintiff Laura Hanson alleges as follows:

Page 1 - **PLAINTIFF'S THIRD AMENDED COMPLAINT**

## Introduction

### 1.

In December 2018, Senator Sara Gelser Blouin hired Plaintiff Laura Hanson to work for Defendant Legislative Assembly, knowing Ms. Hanson has at least one disability related to her mental health. In late 2019, when Ms. Hanson urgently needed medical leave for her mental health disabilities, Senator Gelser Blouin suddenly became very angry with Ms. Hanson, accusing her of making an error that was actually Senator Gelser Blouin's mistake. Ms. Hanson told Senator Gelser Blouin this was abusive behavior. On December 30, 2019, Senator Gelser Blouin reported herself to Defendant Legislature's Human Resources, knowing her report would result in a public investigation and hearings process into Ms. Hanson's mental health disabilities.

### 2.

On January 6, 2020, after learning of Ms. Hanson's statement regarding abuse related to protected leave she attempted to take for her disabilities, Defendant Legislature suspended Ms. Hanson from work, restricting her from the workplace and to her home for Senator Gelser Blouin's "protection," although there were no allegations of wrongdoing against Ms. Hanson. Defendant Legislature hired an unlicensed investigator, a lawyer who typically litigates against employees trying to enforce their employment rights, to make recommendations to the Senate Conduct Committee about Senator Gelser Blouin's complaint against herself. After 10 months of investigation, multiple interviews, and two public hearings about Ms. Hanson's health conditions, the investigator recommended that leave for mental health is not protected under the law and Ms. Hanson was not entitled to medical leave because of her mental health disabilities. On October 7, 2020, after 10 months of restricting Ms. Hanson to her home as a condition of her employment because of her mental health disabilities, the Senate Conduct Committee unlawfully ratified Senator Gelser Blouin's actions against Ms. Hanson. Senator Gelser Blouin terminated Ms. Hanson that day.

Page 2 - **PLAINTIFF'S THIRD AMENDED COMPLAINT**

PARTIES AND VENUE

3.

Plaintiff Laura Hanson is a resident of Multnomah County, Oregon. Ms. Hanson is a qualified person with multiple disabilities. She has been diagnosed with mental and/or physical impairments that substantially limit many of her major life activities. At all times relevant to this Complaint, Defendant was aware of Ms. Hanson's disabilities or regarded her as disabled. At all times relevant to this Complaint, Ms. Hanson was able to perform all of the essential functions of her job with or without accommodation.

4.

Defendant State of Oregon, Legislative Assembly (Defendant Legislature) is a state government entity, governing throughout the State of Oregon. At all times relevant to this Complaint, Defendant Legislature was Plaintiff's employer until it terminated her employment on October 7, 2020. Defendant Legislature employed more than 50 people for each working day during each of 20 or more calendar workweeks before December 17, 2019.

5.

Venue is proper in Multnomah County because the cause of this action, or some part of it, arose in that county in that Defendants directed their actions towards Multnomah County, where Plaintiff worked from home and resided when she was suspended from work and assigned to home.

FACTS

6.

In December 2018, Defendant Legislature hired Plaintiff Laura Hanson as Chief of Staff for Senator Sara Gelser Blouin (Senator Gelser at the time). Senator Gelser Blouin and Legislature knew Ms. Hanson had been diagnosed with at least one disability.

Page 3 - **PLAINTIFF'S THIRD AMENDED COMPLAINT**

7.

At all times in acting as Ms. Hanson's supervisor, Senator Gelser Blouin was acting in the scope and course of her employment with Defendant Legislature or as a proxy for Defendant Legislature.

8.

On December 10, 2019, medical providers diagnosed Ms. Hanson with another disability. Ms. Hanson immediately reported this diagnosis to Senator Gelser Blouin. Senator Gelser Blouin did not say anything about accommodations or attempt to engage in any interactive process.

9.

On December 17, 2019, Ms. Hanson had a severe experience of impairment related to her disabilities. Ms. Hanson saw her therapist that afternoon and the therapist said it was urgent that Ms. Hanson take medical leave because of her disabilities.

10.

Later on December 17, 2019, Ms. Hanson wrote to Senator Gelser Blouin, "I'm thinking about taking the 20th as a mental health day because the need is urgent[.]" Senator Gelser Blouin knew that Ms. Hanson's disabilities are related to her mental health.

11.

On December 18, 2019, Senator Gelser Blouin told Ms. Hanson she should wait until the next week to take time off. Ms. Hanson was afraid to insist she be allowed to take medical leave.

12.

Later on December 18, 2019, Ms. Hanson texted Senator Gelser Blouin that she had a severe symptom of illness. Senator Gelser Blouin texted Ms. Hanson back, without acknowledging the illness or need for medical leave, and asked about a work task.

13.

Ms. Hanson worked on December 19 and 20, 2019, and through the weekend because Senator Gelser Blouin said she needed to and because Ms. Hanson was afraid to demand to take medical leave.

14.

On December 23 and on 27 – 29, 2019, Senator Gelser Blouin pressured Ms. Hanson to continue working, texting her about a cell phone SIM card she wanted Ms. Hanson to change, telling her it cost "$5/day!!", "I'm on the hook for an additional $80z [sic]", "please do it ASAP." Senator Gelser Blouin had purchased the phone in December 2018, and it was not until a year later, during Ms. Hanson's time off, that she decided this was an issue. Ms. Hanson complied with what Senator Gelser Blouin asked, continuing to stay in touch and work to the extent she was able.

15.

When Ms. Hanson returned to work on December 30, 2019, Senator Gelser Blouin had made an error on a Legislative Facebook post. It was an easily correctable error, but Senator Gelser Blouin was very angry about it. She texted Ms. Hanson: "There are so many consistent errors and that is not sustainable," blaming Ms. Hanson for her own error. It seemed like she was actually angry that Ms. Hanson had attempted to take time off.

16.

Ms. Hanson texted Senator Gelser Blouin, "This is a toxic and emotionally abusive work environment and no one can be successful within it." Ms. Hanson told Senator Gelser Blouin she felt she was being forced out of her position. Ms. Hanson did not know at the time she might be eligible for disability accommodations, but she hoped her response would start a conversation with Senator Gelser Blouin. When Defendant Legislature first hired Ms. Hanson, she intended to make her position with Senator Gelser Blouin a career, but because Senator Gelser Blouin did

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

not accommodate Ms. Hanson, and punished her for taking days off, Ms. Hanson felt she was having to choose between her job and her health.

17.

In December 2019 and January 2020, Defendant Legislature had a policy, rule, or regulation in place called "Rule 27." At that time, Rule 27 required all employees of Defendant Legislature to report anyone who disclosed an experience of harassment, discrimination, or retaliation protected by employment law. Rule 27 required a public hearings process regarding that civil rights process to go forward, regardless of whether the person impacted by the experience wanted it to go forward or not.

18.

On December 31, 2019, Jessica Knieling, the HR Director for Defendant Legislature, called Ms. Hanson. She told Ms. Hanson that Senator Gelser Blouin reported Ms. Hanson's text message to HR pursuant to Senator Gelser Blouin's obligations under Rule 27. This reporting obligation only applied to disclosures of harassment, discrimination, or retaliation that fall under employment law protections. HR Director Knieling told Ms. Hanson her days off may have been protected under medical leave law, and that Ms. Hanson may have been entitled to disability accommodations. This was the first Ms. Hanson learned she might have legal protections for what she was experiencing. HR Director Knieling told Ms. Hanson that under Rule 27, there would be a mandatory investigation into Ms. Hanson's text to Senator Gelser Blouin, even though Ms. Hanson did not want that. It seemed like Defendant Legislature was investigating Ms. Hanson in retaliation for complaining about her work environment.

19.

On January 2, 2020, Ms. Hanson emailed HR Director Knieling, "My understanding is that I am legally obligated to comply with the investigation, despite not wanting to or realizing that my text to the senator would prompt one." The HR Director did not respond.

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

20.

On January 6, 2020, HR Director Knieling and Senator Gelser Blouin required Ms. Hanson to meet with them in person in Senator Gelser Blouin's office in the Capitol. Ms. Hanson was so anxious that morning that she texted Senator Gelser Blouin that she had not slept the night before and had symptoms of illness in the morning. When Ms. Hanson arrived, her badge did not work in the building. HR Director Knieling and Senator Gelser Blouin told Ms. Hanson she would be restricted from work and that they were taking her phone and computer. Ms. Hanson was crying and so anxious that she did not fully understand what was going on. Ms. Hanson asked how she would be able to manage Senator Gelser Blouin's calendar if she did not have her phone and her computer. They told Ms. Hanson that she could spend a few hours with her computer and legislative email account to gather any evidence to "prove her claims" or materials she needed to support Senator Gelser Blouin while she was on leave.

21.

That same day, January 6, 2020, HR Director Knieling gave Ms. Hanson a memo saying Ms. Hanson was being restricted from the legislative building and to her home during work hours. Although there were no allegations of violations of Rule 27 or any other abusive or dangerous behavior against Ms. Hanson, HR Director Knieling's memo said Ms. Hanson was being restricted to "protect" Senator Gelser Blouin. Senator Gelser Blouin was not restricted in any way in her employment with Defendant Legislature from that day through the day she terminated Ms. Hanson's employment.

22.

At all times relevant to this complaint, Rule 27 has required "independent investigators" to conduct its investigations into allegations of unlawful harassment, discrimination, and retaliation. Defendant Legislature holds these "independent investigators" out as unaffiliated with the legislative branch. Defendant Legislature asserts that "independent investigators" do not

Page 7 - **PLAINTIFF'S THIRD AMENDED COMPLAINT**

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

provide legal advice or perform the duties of an attorney to a client. At all times relevant to this complaint, however, all of Defendant Legislature's "independent investigators" have been lawyers who regularly defend employers against harassment, discrimination, and retaliation claims made by their employees.

23.

On January 10, 2020, Defendant Legislature required Ms. Hanson to meet with an "independent investigator," Brenda Baumgart of the law firm Stoel Rives, for the Rule 27 investigation Senator Gelser Blouin had initiated. The investigator that Defendant Legislature required Ms. Hanson to meet with is an attorney and not a licensed investigator, in violation of ORS 703.993(b) and ORS 703.995. According to her public profile on the law firm's website, Ms. Baumgart has litigated against employees alleging discrimination, harassment, and retaliation for approximately 30 years.

24.

In the interview with Ms. Baumgart, Ms. Hanson expressed that she was fearful regarding confidentiality and did not want to go through this process. Early in the meeting, the investigator emailed HR Director Knieling to ask whether Ms. Hanson was required to participate in the interview. HR Director Knieling did not respond. Defendant Legislature's investigator told Ms. Hanson that the investigator would never find that a person with mental health impairments falls under a protected class. Nevertheless, Ms. Baumgart continued the interview. At the end of the interview, Defendant Legislature sent out a Memo clarifying that a person complaining of illegal conduct under Rule 27 could opt for a "confidential disclosure and process counseling." Ms. Hanson had not been offered that option and was never offered that option throughout the 10 months in which Defendant Legislature pursued its investigation.

25.

Around January 13, 2020, Ms. Hanson learned that there was a rumor going around Defendant Legislature's workplace that Ms. Hanson was suspended from work because someone had accused her of sexual assault. Ms. Hanson was shocked, as this clearly was not the case, and she asked HR Director Knieling whether there could be an announcement that Ms. Hanson was on "medical leave," to make it clear she was not accused of any wrongdoing. HR Director Knieling said that was not possible because Ms. Hanson was on leave pending an investigation. HR Director Knieling made it clear that Ms. Hanson was restricted to her home and banned from the workplace on the advice of Defendant Legislature's investigator, because of its investigation, not for Ms. Hanson's health. This, again, made it clear that Defendant Legislature were investigating Ms. Hanson in retaliation for her attempts to take medical leave related to her disabilities, and/or for reporting and opposing interference with medical leave related to her disabilities.

26.

On January 24, 2020, after learning of the Memo released January 10, 2019, Ms. Hanson emailed Defendant Legislature's Equity Officer (LEO), Jackie Sandmeyer, "Under Rule 27, section 11, it is my understanding that you are able to make the investigation confidential if I would like it to be. From my understanding, you are also able to stop the investigation if I so choose. Is that correct?"

27.

On January 27, 2020, LEO Sandmeyer responded, "I'll talk to the investigators about the complaint and get back to you about what options you have." Later that day, LEO Sandmeyer emailed that because Senator Gelser Blouin had made the complaint against herself under Defendant Legislature's mandatory reporting requirements through Rule 27, the investigator was moving forward with the investigation no matter what Ms. Hanson wanted. Essentially,

according to LEO Sandmeyer, because Senator Gelser Blouin complained against herself, any benefits under Rule 27 applying to "complainants" applied to Senator Gelser Blouin.

28.

On January 29, 2020, LEO Sandmeyer reiterated that if Ms. Hanson declined to participate in Defendant Legislature's investigation, the investigation would still go forward.

29.

On February 13, 2020, Defendant Legislature's investigator interviewed Ms. Hanson again. Ms. Hanson complied with the interview, fearful that it seemed Defendant Legislature appeared to be investigating Ms. Hanson under the guise of responding to Senator Gelser Blouin's complaint about herself, although Ms. Hanson was accused of no wrongdoing.

30.

On March 12, 2020, Ms. Baumgart required Ms. Hanson to meet again for six hours. Ms. Hanson began crying and exhibiting severe distress during this meeting. Ms. Hanson expressed that this process had triggered suicidal ideations for her. The investigator provided no accommodations for Ms. Hanson throughout the investigation process, although Ms. Hanson showed and reported severe symptoms related to her disabilities.

31.

On July 2, 2020, Ms. Hanson learned of a hearing set for July 15, 2020, in front of the Senate Conduct Committee regarding Defendant Legislature's investigation into Senator Gelser Blouin. Ms. Hanson received an "Investigation Report" from Ms. Baumgart. As part of the report, Ms. Baumgart demonstrated her bias against people with mental health disabilities, recommending that leave for "mental health" does not qualify for protection under Oregon medical leave law.

32.

On July 3, 2020, Ms. Hanson asked for a postponement of the public hearing and her opportunity to respond to Defendant Legislature's biased investigation report. On July 7, 2020, the Senate Conduct Committee, which at all times was acting on behalf of Defendant, told Ms. Hanson that the conduct hearing, including determinations about whether Rule 27 applied to Ms. Hanson's attempts to take protected leave for her mental health disabilities, would go on with or without her, and that she could not have an extension to respond. That day, Ms. Hanson again asked for a postponement of the hearing to accommodate her disabilities and because her doctor advised her she may have COVID-19. The Senate Conduct Committee denied her request. The Senate Conduct Committee now said Ms. Hanson was not required to attend the hearing, but it would go on without her. Because Ms. Hanson was the one suspended from work, not Senator Gelser Blouin, Ms. Hanson was fearful that not attending would impact her employment.

33.

On July 15, 2020, the Senate Conduct Committee held a public hearing, questioning Ms. Hanson, and asking her to provide evidence. At that hearing, LEO Sandmeyer testified, "The only authority I have to put a party on administrative leave would be related to a Respondent as an interim measure. So, I could say that a responding party, you know, that I would have concern from my expertise or from information an investigator has, to say that that person may cause future reoccurrence of harm to an individual or may cause sort of a larger concern for harm to the capitol community." Although Ms. Hanson had not been accused of anything and was not a "Respondent," this again confirmed that Ms. Hanson, as the one suspended from work, was being investigated in retaliation for her attempts to take medical leave related to her disabilities and/or for reporting and opposing interference with medical leave related to her disabilities.

Page 11 - **PLAINTIFF'S THIRD AMENDED COMPLAINT**

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

34.

Also at the July 15, 2020, hearing, the Senate Conduct Committee acknowledged that it had not considered any of Ms. Hanson's disabilities in its investigation and said Ms. Hanson would be required to initiate another public hearing process in order for the Senate Conduct Committee to consider her disabilities.

35.

On October 7, 2020, the Senate Conduct Committee again held a public hearing, discussing Ms. Hanson's medical issues and whether they qualified her for protected class status under Rule 27. The Senate Conduct Committee voted that Ms. Hanson was protected under medical leave law. Nevertheless, relying on the unlicensed "independent investigator," the Senate Conduct Committee voted that Ms. Hanson was not protected under Rule 27.

36.

Later, on October 7, 2020, Senator Gelser Blouin terminated Ms. Hanson's employment, accusing her of "errors," with no clarification. The only example of an "error" Senator Gelser Blouin pointed to is an error Senator Gelser Blouin herself had made. Senator Gelser Blouin also accused Ms. Hanson of deleting emails from her inbox. At Senator Gelser Blouin's instruction, when Ms. Hanson was suspended from work on January 6, 2020, Ms. Hanson did delete "forwarded" versions of emails from Senator Gelser Blouin's "sent" box, in order to avoid crowding Senator Gelser Blouin's outbox. Ms. Hanson did not delete original emails, and the forwarded records continued to be maintained in Ms. Hanson's legislative email, which the Defendant maintained access to, although it restricted Ms. Hanson from access. Senator Gelser Blouin later additionally testified that she terminated Ms. Hanson's employment because Ms. Hanson communicated with the news organization Oregon Public Broadcasting regarding Ms. Hanson's communications with Senator Gelser Blouin and because of the investigator's findings.

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

37.

On December 29, 2020, Plaintiff filed a complaint with the Bureau of Labor and Industries and the Equal Employment Opportunity Commission.

38.

On April 21, 2021, the Bureau of Labor and Industries issued Plaintiff a 90-day right-to sue-letter.

39.

Around July 2021, Ms. Hanson learned that HR Director Knieling and others had referred to her as "crazy" because of her disabilities and that Defendant Legislature's Rule 27 investigation may have lasted 10 months in part because Defendant Legislature failed to pay Ms. Baumgart in May and September 2020.

40.

On December 22, 2022, Defendant Legislature re-hired Ms. Hanson as a legislative assistant, working under another chief of staff, for a state representative.

41.

Around January 3, 2023, Ms. Hanson started work again for Defendant Legislature. She met with her supervisor to ask for disability accommodations. The accommodations she requested included that she be given clear, written instruction and expectations regarding her job duties.

42.

Around January 4, 2023, the state representative she worked for called and acknowledged her requests for accommodation by phone, including clarifying some and confirming understanding of the request for clear written instruction and written expectations.

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

43.

Around January 10, 2023, Ms. Hanson contacted HR Director Knieling to ask for an accommodation related to a Rule 27 training that HR Director Knieling was conducting. HR Director Knieling told Ms. Hanson she would need to fill out certain paperwork in order to receive accommodations. Ms. Hanson began filling out the paperwork right away.

44.

Around January 19, 2023, Ms. Hanson had a long conversation by phone with her state representative, explaining that she was struggling to understand roles and assignments. The representative knew this was related to one of Ms. Hanson's requested disability accommodations. Ms. Hanson suggested a number of solutions to her confusion over assignments. The representative said they would revisit the conversation.

45.

Around January 23, 2023, a coworker who worked in a different part of the legislative building and whom Ms. Hanson had never met told Ms. Hanson, "I know who you are," implying that Ms. Hanson had a bad reputation in the legislature.

46.

On January 25, 2023, Defendant Legislature terminated Ms. Hanson's employment. The stated reason for termination was "differences in political and communications strategy are leading to tension, duplicative work, and lost time. I need an LA 2 who will accept direction under my Chief of Staff and Legislative Director, rather than question and critique the strategy and bypass their directions." This appeared to directly target Ms. Hanson's request for clear, written communication of tasks and expectations. At no point did Defendant Legislature engage in an interactive process to accommodate Ms. Hanson or provide Ms. Hanson with her requested accommodation of clear written instruction and expectations.

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

47.

Defendant's actions and inactions have caused Plaintiff harm such as wage loss, medical expenses, reputational harm, lifetime income loss because of reputational damage, and severe emotional distress such as betrayal, stress, anxiety, shame, humiliation, degradation, sleeplessness, disruption to her normal routines, career interruption, and so much fear and hopelessness that Plaintiff experienced suicidal thinking as a result of having an employer she was dedicated to turn against her and force her through a public hearings process regarding medical diagnoses for her disabilities. Compensation for these harms should be determined by a jury at trial. Ms. Hanson is also entitled to relief that is just and equitable.

### FIRST CLAIM FOR RELIEF – DISABILITY DISCRIMINATION
### VIOLATION OF OREGON LAW

48.

Plaintiff incorporates paragraphs 1-51 herein as though fully set forth in this claim and each count included in this claim.

49.

At all times, Senator Gelser Blouin; the members of the Senate Conduct Committee, individually and collectively; and, Defendant Legislature's HR Director, LEO, investigator, and other Senators, Representatives, employees, and/or agents were acting in the scope and course of their employment or agency with Defendant Legislature.

### COUNT 1: DISCRIMINATION BASED ON DISABILITY
### VIOLATION OF ORS 659A.112

50.

Defendant Legislature violated ORS 659A.112 including taking one or more of the following adverse employment actions because of Ms. Hanson's disabilities:

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

a) On January 6, 2020, in limiting and/or segregating Plaintiff by restricting her from the workplace and limiting her movement during the workday to her home because of her disabilities;

b) On October 7, 2020, in terminating Plaintiff's employment because of her disability; and/or

c) On January 25, 2023, in terminating Plaintiff's employment because of her disability.

COUNT 2: FAILURE TO ACCOMMODATE
VIOLATION OF ORS 659A.112
(IN THE ALTERNATIVE TO COUNTS 1, 2, AND 4)

51.

Defendant Legislature violated ORS 659A.112 in failing to accommodate Plaintiff's disabilities by interfering with time off Ms. Hanson needed related to her disabilities between December 17, 2019, and December 30, 2019 resulting in her termination on October 7, 2020, and/or, in 2023, failing to engage in an interactive process to accommodate Ms. Hanson's disabilities, including failing to provide clear, written instruction and expectation, resulting in Ms. Hanson's termination, resulting in her termination on January 25, 2023.

52.

Defendant's actions and inactions described above, and incorporated into Plaintiff's First Claim, Counts 1-3, have caused Plaintiff harm such as wage loss, medical expenses, reputational harm, lifetime income loss because of reputational damage, and severe emotional distress such as betrayal, stress, anxiety, shame, humiliation, degradation, sleeplessness, disruption to her normal routines, career interruption, and so much fear and hopelessness that Plaintiff experienced suicidal thinking as a result of having an employer she was dedicated to turn against her and force her through a public hearings process regarding medical diagnoses for her disabilities. Compensation for these harms should be determined by a jury at trial.

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

53.

For Plaintiff's First Claim, Counts 1-3 individually and collectively, Plaintiff is entitled to prevailing party costs and reasonable attorney fees and costs under ORS 659A.885.

## SECOND CLAIM FOR RELIEF – DISABILITY DISCRIMINATION
## VIOLATION OF FEDERAL LAW

Plaintiff incorporates paragraphs 1-58 as though fully set forth herein into this claims and each count included in this claim.

54.

At all times, Senator Gelser Blouin; the members of the Senate Conduct Committee, individually and collectively; and, Defendant Legislature's HR Director, LEO, investigator, and other employees and/or agents were acting in the scope and course of their employment or agency with Defendant Legislature.

### COUNT 1: ADVERSE EMPLOYMENT ACTIONS

55.

Defendant Legislature violated 42 USC § 12111, *et seq.* and/or 29 U.S.C. 701, *et seq.*, by taking one or more of the following adverse employment actions:

a) On January 6, 2020, in limiting and/or segregating Plaintiff by restricting her from the workplace and limiting her movement during the workday to her home because of her disabilities;

b) On October 7, 2020, in terminating Plaintiff's employment because of her disability.

### COUNT 2: FAILURE TO ACCOMMODATE
### (IN THE ALTERNATIVE TO COUNT 1)

56.

Defendant Legislature violated 42 USC § 12111, *et seq.* and/or 29 U.S.C. 701, *et seq.*, by failing to accommodate Plaintiff's disabilities by interfering with time off Ms. Hanson needed

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

related to her disabilities between December 17, 2019, and December 30, 2019 resulting in her termination.

57.

Defendant's actions and inactions described above, and incorporated into Plaintiff's Second Claim, Counts 1 or 2, have caused Plaintiff harm such as wage loss, medical expenses, reputational harm, lifetime income loss because of reputational damage, and severe emotional distress such as betrayal, stress, anxiety, shame, humiliation, degradation, sleeplessness, disruption to her normal routines, career interruption, and so much fear and hopelessness that Plaintiff experienced suicidal thinking as a result of having an employer she was dedicated to turn against her and force her through a public hearings process regarding medical diagnoses for her disabilities. Compensation for these harms should be determined by a jury at trial.

58.

For Plaintiff's Second Claim, Counts 1 and 2 individually and collectively, Plaintiff is entitled to reasonable attorney fees and costs under 42 USC § 12205.

### THIRD CLAIM FOR RELIEF – MEDICAL LEAVE INTERFERENCE VIOLATION OF ORS 659A.183

59.

Plaintiff repeats and realleges paragraphs 1-68 as though fully set forth.

60.

At all times relevant to this Complaint, Senator Gelser Blouin was acting in the scope of her employment as an agent, employee, or proxy for Defendant Legislature.

61.

Defendant Legislature violated ORS 659A.183 by interfering with Plaintiff's medical leave in one or more of the following:

a)  In telling Plaintiff it was not convenient to take medical leave on December 18, 2019;

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

b)  In failing to respond to Plaintiff's report of acute illness symptoms on December 18, 2019, and continuing to require her to work;

c)  Knowing Plaintiff's therapist said medical leave was urgent, in requiring Plaintiff to respond to work issues between December 18-30, 2019; and/or

d)  In terminating Ms. Hanson's employment on October 7, 2020, because she attempted to take protected leave.

### 62.

Plaintiff is entitled to equitable relief including back pay, front pay, reinstatement, prevailing party costs, and reasonable attorney fees and costs under ORS 659A.885.

### FOURTH CLAIM FOR RELIEF – WHISTLEBLOWER RETALIATION VIOLATION OF ORS 659A.199

### 63.

Plaintiff repeats and realleges paragraphs 1-72 as though fully set forth.

### 64.

At all times, Senator Gelser Blouin; the members of the Senate Conduct Committee, individually and collectively; and, Defendant Legislature's HR Director, LEO, investigator, and other employees and/or agents were acting in the scope and course of their employment or agency with Defendant Legislature.

### 65.

Defendants violated ORS 659A.199 in one or more of the following:

a)  In suspending Plaintiff from work;

b)  In October 2020, in terminating Plaintiff for reporting interference with medical leave related to her disabilities and retaliation for attempting to take medical leave; and/or

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

c)  In October 2020, in terminating Plaintiff's employment for making good faith reports to the news that she believed she experienced unlawful disability discrimination and/or medical leave interference or retaliation.

All and each of these because Plaintiff reported in good faith information that she believed to be evidence of a violation of a state or federal law, rule, or regulation by reporting and continuing to report between December 30, 2019, and October 7, 2020, she believed Defendant interfered with medical leave related to her disabilities.

66.

Defendant's actions and inactions have caused Plaintiff harm such as wage loss, medical expenses, reputational harm, lifetime income loss because of reputational damage, and severe emotional distress such as betrayal, stress, anxiety, shame, humiliation, degradation, sleeplessness, disruption to her normal routines, career interruption, and so much fear and hopelessness that Plaintiff experienced suicidal thinking as a result of having an employer she was dedicated to turn against her and force her through a public hearings process regarding medical diagnoses for her disabilities. Compensation for these harms should be determined by a jury at trial.

67.

Plaintiff is entitled to prevailing party costs and reasonable attorney fees and costs under ORS 659A.885.

**FIFTH CLAIM FOR RELIEF – PUBLIC EMPLOYER WHISTLEBLOWER RETALIATION VIOLATION OF ORS 659A.203**

68.

Plaintiff repeats and realleges paragraphs 1-77 as though fully set forth.

Page 20 - **PLAINTIFF'S THIRD AMENDED COMPLAINT**

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

69.

At all times, Senator Gelser Blouin; the members of the Senate Conduct Committee, individually and collectively; and, Defendant Legislature's HR Director, LEO, investigator, and other employees and/or agents were acting in the scope and course of their employment or agency with Defendant Legislature.

70.

Defendants violated ORS 659A.203 in one or more of the following:

a)  In suspending Plaintiff from work;

b)  In October 2020, in terminating Plaintiff for reporting interference with medical leave related to her disabilities and retaliation for attempting to take medical leave; and/or

c)  In October 2023, in terminating Plaintiff's employment for making good faith reports to a news organization that she believed she experienced unlawful disability discrimination and/or medical leave interference or retaliation.

All because Plaintiff in good faith reported information that she believed to be evidence of a violation of a law, rule, regulation, mismanagement, gross waste of funds, or abuse of authority.

71.

Defendant's actions and inactions have caused Plaintiff harm such as wage loss, medical expenses, reputational harm, lifetime income loss because of reputational damage, and severe emotional distress such as betrayal, stress, anxiety, shame, humiliation, degradation, sleeplessness, disruption to her normal routines, career interruption, and so much fear and hopelessness that Plaintiff experienced suicidal thinking as a result of having an employer she was dedicated to turn against her and force her through a public hearings process regarding medical diagnoses for her disabilities. Compensation for these harms should be determined by a jury at trial.

Cambreleng & Marton LLC
3518 S Corbett Ave
Portland, Oregon 97239
(503) 477-4899

72.

Plaintiff is entitled to prevailing party costs and reasonable attorney fees and costs under ORS 659A.885.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

a. Fair and reasonable economic and noneconomic damages in an amount to be determined by the jury;

b. For attorney fees under ORS 659A.885, 42 USC § 12205, and 29 U.S.C. § 2617;

c. For prevailing party costs under ORS 659A.885;

d. Such relief as the court deems just and equitable;

e. For pre-judgment and post-judgment interest; and

f. For reasonable costs and disbursements incurred in this action.

DATED this 9th day of May, 2024.

_/s Rebecca Cambreleng_____
Rebecca Cambreleng, OSB No. 133209
Rebecca@workplacelawpdx.com
CAMBRELENG & MARTON LLC
3518 S. Corbett Ave.
Portland, Oregon 97239
(503) 477-4899
*Of Attorneys for Plaintiff*

Meredith Holley, OSB No. 125647
meredith@erisresolution.com
LAW OFFICE OF MEREDITH HOLLEY
207 E 5th Avenue, Suite 254
Eugene, OR 97401
Telephone: (458) 221-2671
Fax: (833) 352-3615
*Of Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on May 9, 2024, I caused to be served a true and correct copy of

**PLAINTIFF'S THIRD AMENDED COMPLAINT** upon the parties hereto via electronic means through

the Court's Case Management/Electronic Case File system and via electronic mail:

> Meredith Holley, OSB No. 125647
> Meredith@erisresolution.com
> Eris Conflict Resolution
> 207 E 5th Avenue, Suite 254
> Eugene, Oregon 97401
> *Of Attorneys for Plaintiff*
>
> Marc Abrams, OSB No. 890149
> Marc.abrams@doj.state.or.us
> Allie Boyd, OSB No. 163478
> Allie.m.boyd@doj.state.or.us
> Oregon Department of Justice
> 100 SW Market Street
> Portland, Oregon 97201
> *Attorneys for Defendant*

CAMBRELENG & MARTON LLC

By: s/ Maxwell Joyner
        Max Joyner, Paralegal